Susan KENYON

v.

TOWN OF WESTERLY.

No. 95–263–Appeal.

Supreme Court of Rhode Island.

May 30, 1997.

H. Jefferson Melish, Wakefield, for Plaintiff.

Kenneth P. Borden, Providence, Kelly M. Fracassa, Westerly, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before the court on an appeal by the plaintiff, Susan Kenyon (Kenyon), from a judgment entered in the Superior Court in favor of the defendant, the town of Westerly (town), and on the cross-appeal of that town from that portion of the judgment in favor of the plaintiff. We affirm the judgment entered below. The facts of the case insofar as pertinent to this appeal are as follows.

Kenyon had been employed beginning July 1, 1987, by the town as assistant animal control officer, constable, and police matron. Her principal duties were the maintenance of the animal pound. This position required her to feed the animals, to clean the animals' cages, and their exercise areas, and to provide the animals with water.

Prior to July 17, 1993, Kenyon had never received either an oral or a written warning, nor was she disciplined in any other manner. She had received commendations in her personnel file from the chief of police, Mark Champlin (Champlin). However, in June of

1993 Kenyon was asked by Champlin to serve as full-time animal-control officer during the temporary absence of the person who had held this position and was on leave. Thereafter, Champlin received reports of unsanitary conditions at the pound and checked from time to time in order to observe these conditions. On July 17, 1993, Champlin observed maggots in the animal food, and dead cats and a dead raccoon in the animal-control van. He also noted a build-up of animal waste and fecal matter. On the basis of these observations, Champlin drafted a termination notice in the following terms:

> "Be advised that I will no longer tolerate what I believe to be an unsanitary facility, and as Chief of Police I am notifying you that your employment with the Town of Westerly is now being *terminated, effective immediately.*"

Kenyon filed a complaint in the Superior Court on August 12, 1993, pursuant to 42 U.S.C. § 1983, alleging that she had been terminated without a hearing and that her rights to procedural due process had been violated. She sought damages as well as injunctive relief and claimed counsel fees pursuant to 42 U.S.C. § 1988. This complaint was brought against the town, and Champlin was not named as a party. In her complaint Kenyon sought a temporary restraining order that would reinstate her in her positions as animal-control officer, constable, and matron. On the same date as the filing of her complaint, a justice of the Superior Court issued a temporary order requiring that Kenyon be reinstated forthwith with pay and benefits retroactive to the date of her discharge, July 17, 1993.

Pursuant to the court's order Kenyon was reinstated but was suspended with pay pending a hearing before the town council. The hearing was scheduled for August 26, 1993. All members of the council participated in the hearing except counsel member Patricia A. Douglas (Douglas), who had earlier complained to the chief of police and others concerning the unsanitary conditions that obtained at the animal pound. Douglas recused herself from sitting with the council but did testify as a witness during the course of the hearing. Prior to and during the hearing the

town solicitor, Joseph T. Turo, advised the council but did not prosecute the case against Kenyon. An assistant town solicitor, David Gervasini, presented the town's case against Kenyon. He presented six witnesses, Bonnie Billcliffe (Billcliffe), another assistant animal control officer; Douglas; Champlin; John Marrone, Jr., a water-supply technician; Douglas St. Clair, foreman of the Westerly transfer station; and Beth Sciarroni, a member of the Animal Rescue League. These witnesses testified concerning the bad odors at the pound, the maggots in the food dishes, the slime in the water dishes, the overflowing garbage bins, the presence of dead animals, and the presence of trash. Douglas testified that fresh food had been placed on top of old food in the cat dishes and that she had observed maggots between the two layers. She testified that subsequent to Kenyon's discharge on July 17, 1993, conditions at the pound improved significantly since Billcliffe had undertaken the duty to clean it.

Kenyon was represented by Attorney H. Jefferson Melish (Melish), who requested the opportunity to cross-examine the town's witnesses. The president of the council, on the advice of the town solicitor, ruled that the town should present its witnesses first without cross-examination but that Melish would have the opportunity to recall any of the town's witnesses for examination during the course of his presentation. Melish presented a number of witnesses on behalf of Kenyon but first examined Champlin as an adverse witness. Champlin was unable to produce a job description for the position of assistant animal-control officer. He also admitted that from time to time he had commended Kenyon for her work.

Melish presented Michael J. Conway, D.V.M. (Dr. Conway), a veterinarian with nineteen and one-half years' experience in the treatment of dogs and cats. He stated that he was present during June and July of 1993 to vaccinate animals and did not notice anything out of the ordinary in the condition of the animal pound. Melish also presented Deborah Siber, an assistant to Dr. Conway, who stated that she visited the pound every Friday from June 26 to July 16, 1993, and did not notice gross fecal matter or anything else

out of the ordinary. She testified that the cages were clean but noted that one could not control the number of times an animal might urinate or defecate. Other witnesses presented on behalf of Kenyon were Deborah Morrissette, who did volunteer work at the pound; Tina Ferraco, a youth counselor for South County Community Action, who had visited the pound while supervising volunteers; and Kelly Serpa, a friend of Kenyon's sister who had visited the pound. Kenyon also testified in her own behalf. All Kenyon's witnesses testified favorably in respect to her performance at the pound. Kenyon noted that there were problems with the water supply and that maggots emerged from the drains. Generally she denied the allegations of the town's witnesses. She also described a visit by a film crew from channel 6 that had been at the pound on July 15, 1993. She testified that the pound had been thoroughly cleaned in preparation for the taping. The videotape was shown to the council and admitted into evidence. Melish did not call any of the town's witnesses during his case, save Champlin.

At the conclusion of the hearing, a council member moved to dismiss Kenyon on the basis of a proposed finding suggested by the chairman "whether or not Susan Kenyon should be removed in her position of Animal Control Officer and as Constable because of the unsanitary conditions that existed at the Westerly Animal Control Facility." This motion was seconded and passed by a five-to-one vote. Council member Mary Jane Di-Maio (DiMaio) voted in Kenyon's favor. Thereafter, Kenyon returned to the Superior Court and sought a preliminary injunction on the ground that she had not had a proper hearing before the town council. The town moved to amend its answer. Kenyon moved for summary judgment, which motion was denied. The motion to amend the answer was granted, and the case was tried on its merits on July 21 and 26, 1994. The trial justice heard testimony from Kenyon concerning possible bias on the part of council members Douglas and DiMaio. The town presented no witnesses but introduced one piece of documentary evidence concerning the hours Kenyon had been employed. After receiving post-trial memoranda, the trial jus-tice rendered a decision and entered a judgment in favor of the town in respect to all matters subsequent to August 26, 1993, but entered judgment in favor of Kenyon in respect to her position as matron and in favor of Kenyon in respect to her civil-rights claims that accrued up to August 26, 1993, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988. No hearing in respect to attorney's fees was held. On January 31, 1995, Kenyon filed her appeal from that portion of the Superior Court's judgment in favor of the town, and the town then cross-appealed in respect to the portion of the judgment in Kenyon's favor. In support of their appeals, the parties have raised a number of contentions that may be consolidated into three issues. Further facts will be supplied as necessary to deal with each of these issues.

### I

### The Discharge by Champlin

It is undisputed that Champlin's purported discharge of Kenyon was without authority. Section 9-1-7 of the Westerly Code provides that employees of the Department of Public Safety "shall hold their respective offices during good behavior, until vacated by death, resignation, retirement, or removal for the good of the service by the council upon recommendation of their chief, director of public safety and the manager." Under this provision no authority may remove such an employee as Kenyon save the town council. However, Champlin was not named as a defendant, and his purported discharge triggered action by the Superior Court that reinstated Kenyon until a hearing was held by the council. Prior to the entry of the temporary order of the Superior Court, Kenyon's counsel had written to Champlin objecting to Kenyon's termination and requesting her immediate reinstatement with back pay and legal fees. He also sought a meeting to facilitate Kenyon's return to her duties. The following day Champlin upon the advice of the town solicitor, wrote a memo to the acting town manager in which he requested a hearing on his administrative action. The letter of Kenyon's counsel was dated August

3, 1993. On August 10, 1993, the Westerly Town Council met and agreed to conduct a hearing on August 26, 1993. Kenyon was notified of this hearing by letter dated August 12, 1993. The letter did not offer to reinstate Kenyon pending the hearing. The temporary restraining order was entered by a justice of the Superior Court on August 12, 1993. This order had the effect of reinstating Kenyon with back pay and benefits to the date of the discharge.

■ Since Kenyon's purported discharge by the chief was invalid and since the council did not order her reinstated with pay pending the hearing, the action of the court was necessary in order to protect her right to a pretermination hearing. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

This action was properly taken under the provisions of 42 U.S.C. § 1983, *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 119–21, 112 S.Ct. 1061, 1065–66, 117 L.Ed.2d 261, 269–70 (1992); *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611, 635 (1978), and therefore the trial justice was correct in holding that Kenyon was entitled to a counsel fee for such legal expense as may have been incurred in order to achieve her reinstatement, pursuant to 42 U.S.C. § 1988.

## II

### The Dismissal by the Council

■ The trial justice, after hearing evidence from witnesses and reviewing the actions taken by the town council, determined that the hearing conducted by the council was not a violation of the standards of due process set forth in *Loudermill.* In that case the Supreme Court of the United States held that an employee with classified status was entitled at least to an informal pretermination hearing that might be followed by a post-termination hearing in accordance with such administrative procedures as state law might provide. *Loudermill,* 470 U.S. at 545–48, 105 S.Ct. at 1495–96, 84 L.Ed.2d at 506–07. In the case at bar, by virtue of the order of the Superior Court in reinstating Kenyon,

the hearing before the town council constituted a pretermination hearing that went beyond the minimal requirements of *Loudermill,* and substantially complied with the standards governing an administrative hearing. *See La Petite Auberge, Inc. v. Commission for Human Rights,* 419 A.2d 274 (R.I. 1980); *Aniello v. Marcello,* 91 R.I. 198, 162 A.2d 270 (1960). In rendering her decision, the trial justice made the following comments:

"The plaintiff further maintains that cleaning the pound was not even a requirement of the job and thus could not have been the basis for her termination. She characterizes cleanliness as irrelevant as she was not a janitor. The latter argument the court simply cannot accept. Anyone who undertakes the care of animals has, as a necessary concomitant to that care, the provision of adequate water, of adequate food, the provision of healthful shelter. When the care of animals is one's actual profession, aside from just having a pet or a hobby, that responsibility should be all the more obvious. Moreover, Mrs. Kenyon held a supervisory position, she was the individual who was responsible for overseeing the shelter. Even if she may not been directly responsible for the conditions which existed in her absence, her position required her to insure that the animals were properly cared for.

"This court cannot substitute its judgment for that of the town council. It matters not that the court would have conducted the hearing differently or disallowed certain testimony. An examination of the record in this case reveals that, despite certain irregularities in procedure Mrs. Kenyon's rights to a hearing were observed. The town council chose to believe the testimony of the witnesses who said that the shelter was filthy. Such a conclusion does not mean that they disbelieved Mrs. Kenyon's witnesses, necessarily, they may have simply determined that the so-called town's witnesses were in a better position, that is less distracted by other activities, such as inoculating animals, to make significant observations.

"By all accounts, Mrs. Kenyon is an individual who enjoys working with animals and is considerate of them. She also evidently enjoys helping the citizens in her town concerning the care of their animals. However, she cannot be relieved of the responsibility of seeing to the cleanliness of the animal shelter. There is, in the record, legally sufficient evidence to support the town council's conclusion that she neglected that particular function. Thus, despite the fact that the hearing was not conducted as it would have been in an exclusively judicial forum, the court cannot find that Mrs. Kenyon's civil rights were violated. On that issue, judgment will enter on behalf of the defendants."

Although, as the trial justice noted, the hearing was not held in strict conformity to judicial procedures as applied in the Superior Court, it nonetheless offered Kenyon the right to present witnesses and to recall the town's witnesses for adverse examination in the nature of cross-examination. It is not necessary that a hearing before a town council conform to all the procedures that might be applied in a judicial tribunal. *See Whyte v. Sullivan,* 119 R.I. 649, 653, 382 A.2d 186, 188 (1978); *Cullen v. Adler,* 107 R.I. 749, 754, 271 A.2d 466, 469 (1970).

It should also be noted that Kenyon did not question the impartiality of the members of the council who sat in judgment in her case save possibly to note an indication of bias on the part of council member DiMaio, who voted in her favor.

In accordance with the Court's decision in *Loudermill,* we are of the opinion that the council hearing supplied all the procedural processes that were due. Kenyon's disagreement with the ultimate decision of the council does not deprive the hearing of its adequacy as a procedural condition precedent to her termination. The trial justice properly declined to substitute her judgment for that of the council. She held that there was competent evidence upon which the council could rest its finding that Kenyon was responsible for unsanitary conditions at the animal pound. In so holding, the trial justice was clearly correct in declining to try the case de novo. We agree that there was ample evidence upon which the council could rely in spite of the fact that there was contrary evidence presented.

Kenyon has argued that she was entitled to a post-termination hearing by a different tribunal after her pretermination hearing by the town council. For this proposition she relies on *Loudermill* and its progeny. Her reliance on *Loudermill* for this proposition is misplaced. In *Loudermill* the Court balanced the issues between the competing interests of the public employer and the property right of the employee in retaining his or her employment. In balancing these interests, the Court issued a broad and general guideline. This guideline provided for an informal pretermination hearing at which the employee would have an opportunity to present his or her side of the story. The pretermination hearing was only an initial check against mistaken decisions—"essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill,* 470 U.S. at 545–46, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. In *Loudermill,* a post-termination proceeding would follow under state law that would meet full adversary requirements. This post-termination hearing was deemed sufficient, even though considerable time elapsed before its completion.

In the case at bar, by order of the Superior Court the pretermination hearing fulfilled the requirements of an adversary proceeding. In such circumstances no further post-termination hearing was required. It should be noted that Kenyon could have sought review of the council's decision by writ of certiorari in this court but chose instead to seek review in the Superior Court. This review was certainly adequate to determine the essential fairness of the proceedings before the town council.

There is no question that under the Westerly Code Kenyon was entitled to a hearing before the council prior to her termination. Such a hearing did take place. It conformed to the essential elements of due-process requirements. The trial justice was correct in upholding the decision of the council.

## III

### The Position as Matron

■ The trial justice upheld the council's dismissal of Kenyon as assistant animal-control officer and also as constable, which position the council determined was adjunct to that of animal-control officer. She found that the position as matron was unconnected with the assistant animal-control officer position. Since the town council had not discussed Kenyon's performance as a matron, nor voted to dismiss her, the trial justice found Kenyon was still employed in her police matron position. In so holding, she was clearly correct.

For the reasons stated, Kenyon's appeal from the judgment of the Superior Court in favor of the town is denied and dismissed. The town's appeal from such portion of the judgment as was in favor of Kenyon is denied and dismissed. The judgment of the Superior Court is affirmed, and the papers in the case may be remanded to that court.