DECISION
The defendants[1] move for summary judgment, pursuant to Rule 56 of the Rhode Island Superior Court Rules of Civil Procedure and the plaintiff moves to amend the complaint, pursuant to Rule 15 of the Rhode Island Superior Court Rules of Civil Procedure.
 Facts/Travel
The plaintiff Warren Hurlbut (Hurlbut or plaintiff) initiated the subject action in December of 1990 with a complaint alleging deprivation of certain civil and constitutional rights as well as retaliatory discharge from State service. Hurlbut's March 28, 1989 dismissal arose from his February 1, 1989 arrest for soliciting from a motor vehicle. At the time of the arrest, Hurlbut was Assistant Director of the Division of Juvenile Correctional Services (Training School) within the Department for Children and Their Families (DCF). At the relevant time, Hurlbut had been employed by the State for approximately seventeen years.
On or about March 1, 1989, Hurlbut informed James E. Patrick, then-Acting Director of DCF (Patrick), of the misdemeanor charge, that the stress involved with the arrest was causing him distress and physical discomfort, and that he was going out on sick leave.[2]
Patrick did not object to Hurlbut's using sick leave and did not require a medical certificate.[3] On March 9, 1989, Picano became the Director of DCF.[4] Prior to Picano becoming Director, Hurlbut had complained about a variety of issues affecting the Training School, including budgetary matters, physical plant concerns, hiring practices and quality of work done by vendors on Training School construction projects.[5] He had also been "critical of the process" by which a certain contract for architectural work at the Training School had been awarded.[6] By March 9, 1989 letter, Peter P. DeLisi then-Labor Relations Coordinator of DCF (DeLisi) notified Hurlbut of an administrative hearing scheduled for March 14, 1989 regarding Hurlbut's having been "charged by the Providence Police with a misdemeanor (soliciting)."[7] Thereby, Hurlbut was notified that "appropriate discipline may be recommended," a request for postponement from Hurlbut would result in change of status from "sick leave with pay to administrative leave without pay," and that his "entire personnel record may be reviewed."[8] Prior to the administrative hearing, Picano directed DCF's counsel, Thomas Bohan (Bohan), to request Hurlbut's termination.[9] Patrick, thinking that the facts were incomplete, told Picano that he disagreed with that disposition.[10]
The administrative hearing proceeded before DeLisi on March 14, 1989 and decision thereon was rendered March 23, 1989.[11] The express purpose of the administrative hearing was to determine whether or not disciplinary action against Hurlbut was appropriate and if so, what action.[12] At the hearing, the allegation against Hurlbut was that he was charged by the City of Providence Police with a misdemeanor (soliciting).[13] During the administrative hearing, Hurlbut's counsel objected to the adequacy of notice given for the hearing, argued that Hurlbut was on medical leave and that denial of a Hurlbut's request for continuance when faced with medical documentation that satisfied DCF's sick leave policy was essentially disciplining Hurlbut.[14] Hurlbut's counsel introduced a 3/13/89 letter from Robert D. Wuraftic, Ph.D.[15] Hurlbut's counsel also contended that DCF failed to indicate to Hurlbut what parts of his personnel record it wished to review.[16] DCF argued that Wuraftic's letter was open-ended and that department policy provided that an employee's request for a continuance would result in the employee being placed on leave without pay until such time as a hearing is held.[17] After consideration of Hurlbut's objections and DCF policy, the hearing officer held the hearing.[18] DCF's only witness was Patrick and its exhibits included the relevant police report dated February 1, 1989, job specification of Assistant Director of the Division of Juvenile Correctional Services, and a Family Court order of detention.[19] After examination and cross examination of Patrick, including submission of DCF's exhibits, the parties rested after closing arguments.[20] The DCF contended that for the good of the service, termination constituted appropriate discipline.[21] Thereafter, the administrative hearing officer noted in his decision that Hurlbut received adequate notice of the hearing and DCF policy was carried out.[22] Additionally, he noted that Hurlbut denied all allegations, did not present Hurlbut as a witness, or any evidence to refute the claim brought by DCF.[23] In deciding the matter, the hearing officer relied on, as had DCF in its argument for discipline, G. L. 1956 § 36-4-38 which provides, in relevant part, "a classified employee with permanent status may be dismissed by an appointing authority whenever he or she considers the good of the service to be served thereby, stated in writing, with full and sufficient reason, and filed with the personnel administrator."[24] Based on the testimony and evidence presented by DCF, the hearing officer decided that termination was appropriate discipline.[25] By March 28, 1989 letter, Picano, then-Director of DCF, notified Hurlbut that DCF was following the discipline recommended by the hearing officer, specifically dismissal.[26]
After the hearing, Patrick received a tape recording obtained by DCF's attorneys which according to Patrick "completely exonerated" Hurlbut from any wrongdoing.[27] Patrick discussed the information with Picano and argued for Hurlbut's reinstatement.[28] On or about April 19, 1989, the misdemeanor charge against Hurlbut was dismissed under Rule 48(a) of the District Court Rules of Criminal Procedure, dismissal by Attorney for the State.[29] After the criminal charge was dismissed, Hurlbut sought reinstatement; the DCF, by Picano's direction, refused.[30] Picano understood that the charges were "withdrawn" and could be "reinstated" if the witness were found; if dismissed, the charges were not renewable.[31]
On or about April 13, 1989, Hurlbut timely appealed his dismissal to the Personnel Appeal Board (PAB), pursuant to G. L. §36-4-42.[32] During the hearing, Hurlbut's counsel argued that the DCF failed to produce Price at the hearing and if it had exculpatory evidence, had an affirmative duty to bring the evidence forward.[33] After the hearings which concluded on February 15, 1990, the PAB decided unanimously in favor of Hurlbut.[34] During the hearing, the PAB, addressing DCF's attempt to admit evidence regarding Price, determined unanimously that Price's disposition had no bearing on Hurlbut's case.[35] The PAB found that the primary basis for Hurlbut's dismissal was the arrest; other proffered reasons were essentially without merit or insufficient.[36] According to the PAB, upon disposition of the criminal charges against Hurlbut via outright dismissal by the prosecuting authority, the basis for the dismissal no longer existed.[37] The PAB decision on or about March 12, 1990 ordered Hurlbut's reinstatement to his former position.[38] In an amended decision dated July 9, 1990, the PAB ordered that Hurlbut receive remedies including full back pay, medical expenses, attorney's fees, reinstatement of leave time, and full credit for seniority.[39] This PAB decision was not appealed.
On October 8, 1989, after Hurlbut's dismissal and before his reinstatement pursuant to the 1990 PAB order, the position of Associate Director for the Training School was created as a part of a departmental reorganization.[40] Said position was filled on December 31, 1989.[41] Patrick and Bohan had advised Picano that Hurlbut should be reinstated and that the creation of an Associate Director position was not appropriate and would not withstand legal scrutiny.[42] Patrick opined that Picano created the Associate Director position to vacate the authority of Hurlbut's position as Assistant Director.[43] When Hurlbut was reinstated to his position as Assistant Director, both positions continued in existence with Hurlbut then under the command of the new Associate Director.[44]
The person who was hired as Associate Director, then Hurlbut's Supervisor, had six months of service in a correctional facility, none of them at the Training School.[45]
During the State's financial crisis of 1991, Hurlbut was laid off. P. Exh. 12. He appealed the layoff to the PAB.[46] In its March 25, 1992 decision, the PAB stated "[w]hile there is no conclusive evidence to ascertain the intentions of the Department [of Children, Youths and Families (DCYF, formerly DCF)], there is sufficient evidence to make it obvious that economics and comparative abilities were not the reasons" for plaintiff's layoff and ordered his reinstatement.[47] According to the PAB, the job specifications of the Associate Director and the Assistant Director were "so nearly identical as to prevent being able to tell the difference."[48]
Subsequently, on September 9, 1992, the PAB ordered DCYF to provide several remedies to compensate Hurlbut for this wrongful layoff.[49] The DCYF appealed the decision of the PAB to this Superior Court, pursuant to G.L. 1956 § 36-4-42.[50] This Court held that the DCYF lacked standing to appeal the decision of the PAB to the Superior Court and dismissed the DCYF's appeal.[51] This Court's decision was not appealed. The instant complaint was filed in December of 1990 after the PAB's 1990 decisions that sustained Hurlbut's first appeal and reinstated him as aforementioned.[52]
Hurlbut brings this civil action pursuant to G. L. 1956 § 42-35-1 etseq., the Administrative Procedures Act (APA), and 42 U.S.C. § 1983, 1985 and 1988. Although discovery was closed on or about July 27, 1999 by court order, modified scheduling orders followed. Defendants filed their motion for summary judgment in July of 1998 to which Hurlbut objected in January of 2000. This Court heard the parties on April 21, 2000. Thereafter, Hurlbut filed a motion to amend to which defendants object. Such additional facts as are pertinent to this decision shall be set forth in the discussion that follows.
 Summary Judgment
"[S]ummary judgment is a drastic remedy that should be cautiously applied." Boland v. Town of Tiverton, 670 A.2d 1245, 1248 (R.I. 1996). When a trial justice is ruling on a motion for summary judgment, the only question before him or her is whether there is a genuine issue of material fact which must be resolved. Rotelli v.Catanzaro, 686 A.2d 91, 93 (R.I. 1996). Summary judgment is proper "only if an examination of the admissible evidence, undertaken in the light most favorable to the nonmoving party, reveals no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Visconti Boren Ltd. v. Bess Eaton Donut Flour Co.,712 A.2d 871, 872 (R.I. 1998) (per curiam) (citing Rotelli v.Catanzaro, 686 A.2d 91, 93 (R.I. 1996)).
A party opposing a motion for summary judgment carries the burden of "proving by competent evidence the existence of a disputed material fact and cannot rest on the allegations or denials in the pleadings or the conclusions or on legal opinions." Macera Brothersof Cranston, Inc. v. Gelfuso Lachut, Inc., 740 A.2d 1262, 1264 (R.I. 1999) (per curiam) (citing Manning Auto Parts, Inc. v. Souza,591 A.2d 34, 35 (R.I. 1991)). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment must be granted. Grande v. Almac's, Inc., 623 A.2d 971, 972 (R.I. 1993).
 Res Judicata
Relying on Department of Correction of the State of Rhode Island v.Tucker and cases cited therein, defendants contend that Hurlbut's complaint is barred completely by the doctrine of res judicata.657 A.2d 546, 549 (R.I. 1995). The defendants argue that under the doctrine of res judicata, if Hurlbut had more claims or damages, including his claim of retaliation, he was required to bring them before the PAB. Hurlbut counters that his claims before this Court are not defeated by the doctrine of res judicata. Essentially, Hurlbut contends the authority of the PAB is limited and not coextensive with this Superior Court. He further argues that an appeal to the PAB is not the exclusive remedy for his alleged claims. However, Hurlbut relies on the doctrine of res judicata to the extent that the PAB determined that the DCF wrongfully and unlawfully terminated his employment.
In Tucker, wherein two quasi-judicial agencies had purported to deal with the same conduct, the Supreme Court stated that generally "the doctrine of res judicata makes prior judgments conclusive in regard to any issues that were raised or that could have been raised before the first tribunal." Id. The prior decision "should have been given preclusive effect upon any issue that was litigated or could have been litigated before that tribunal." Id. at 550.
The PAB is a quasi-judicial agency of the state designed to protectthe interests of state employees under the merit system. Id. at 549 (emphasis added). Pursuant to G. L. 1956 § 36-3-10, the PAB has statutory jurisdiction to hear appeals brought by state employees from adverse employment actions.[53] Perrotti v. Solomon,657 A.2d 1045, 1048 (R.I. 1995). Within the PAB's jurisdiction over classified state employees, it has the right and the duty to consider any "reason for discharge that would not meet the requirements of substantial grounds." Tucker, 657 A.2d at 549. An employee dismissed `for the good of the service' pursuant to § 36-4-38, upon timely application therefor, is entitled to a hearing on "the validity of the reasons for such dismissal." Aniello v. Marcello,91 R.I. 198, 207-08, 162 A.2d 270, 274-75 (1960). The appointing authority is required to establish by legally sufficient evidence that the dismissal was based on substantial grounds. Id. at 274. Except for an appeal to the Superior Court through the vehicle of an administrative appeal pursuant to the APA, a decision of the PAB would be final. The General Assembly has neither given the PAB any jurisdiction over Whistleblower actions nor does the PAB have jurisdiction over actions brought pursuant to Title 42 of the United States Code §§ 1983, 1985, and 1988. The Court notes that the instant matter is not before this Court as an administrative appeal under the APA.
When invoked, the doctrine of res adjudicata "`makes a prior judgment in a civil action between the same parties conclusive with regard to any issues that were litigated in the prior action, or, that could have been presented and litigated therein.'" Garganta v.Mobile Village, Inc., 730 A.2d 1, 4-5 (R.I. 1999) (quoting ElGabri v.Lekas, 681 A.2d 271, 275 (R.I. 1996)). "Res judicata only applies to issues that could have been fully and fairly litigated in prior proceedings." Farnum v. Burns, 561 F. Supp. 83, 86 n. 3 (D.R.I. 1983). The doctrine "serves as an `absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action.'" Garganta, 730 A.2d at 5 (citation omitted). "The same rule should apply to the decision of a quasi-judicial administrative tribunal as to the judgment of a court." Tucker, 657 A.2d at 549 (citing Restatement (Second) Judgments, ch. 6, § 83 (1982)).
However, the administrative proceeding at issue here was of limited substantive and remedial scope. Hurlbut could not have litigated in the administrative proceeding the specific claims asserted and the remedies sought in this Whistleblower and §§ 1983, 1985 and 1988 action, including the claims against Picano individually. The administrative proceeding was limited to determining whether DCF's termination of Hurlbut for the good of the service was based on substantial grounds. Pursuit of a claim with the PAB, an agency with limited jurisdiction, does not preclude the subsequent pursuit of related claims based on state or federal rights that could not have been properly asserted before the PAB. Under these circumstances, the doctrine of res judicata cannot be applied, as defendants urge, to dismiss summarily this civil action. This Court agrees with Hurlbut, however, that the non-appealed PAB decision regarding his March 1989 termination being wrongful is final.
 Count 1 — Violation of 42 U.S.C. § 1983
In Count I of his complaint, Hurlbut alleges § 1983 violations.[54] A viable § 1983 claim contains two essential components: "First, the plaintiff must allege and prove that some person or state governmental entity, while acting under color of state law, has deprived him of a federal right secured by federal law or constitution. Second, the plaintiff must identify the federal right alleged to have been violated." Brunelle v. Town of SouthKingstown, 700 A.2d 1075, 1081 (R.I. 1997) (citations omitted). Accordingly, in analyzing a § 1983 action, there are two immediate subjects of inquiry: namely, who and what. Id. "First, who acting under color of state law has caused the plaintiff's alleged deprivation, and second, of what federal right, privilege or immunity secured by the Federal constitution or federal statutes has the plaintiff been deprived?" Id.
Herein, Hurlbut names the State and Picano as defendants, specifically Picano as the governmental official acting under color of state law. However, "neither a State nor its officials acting in their official capacities are `persons' under § 1983." Pontbriand v.Sundlun, 699 A.2d 856, 868 (R.I. 1997) (citing Will v. MichiganDepartment of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). Accordingly, because Hurlbut sued both Picano in his official capacity and the State, those portions of Hurlbut's complaint based on § 1983 fail as a matter of law. With respect to Hurlbut's § 1983 claim against Picano individually, Hurlbut contends that Picano deprived him of procedural due process when he was terminated. Further, Hurlbut contends that Picano retaliated against him for constitutionally protected speech.
Regarding procedural due process, Hurlbut contends that DCF failed to abide by its administrative hearing rules, including its reliance on the police report without further investigation or presentation of witnesses. Essentially, Hurlbut challenges the content of DCF's case before the hearing officer, specifically alleging the introduction of false and prejudicial evidence by DCF. Additionally, Hurlbut argues that the determination of due process protections is a question of fact, not a question of law, particularly where issues of bad faith with malice are raised. Finally, Picano contends that the doctrine of qualified immunity entitles him to immunity from suit.
In support of the motion for summary judgment, Picano contends that Hurlbut received the due process to which he was entitled regarding his March, 1989 dismissal from state service. Hurlbut was notified of the administrative hearing, the potential of disciplinary action resulting therefrom, and he was given the opportunity to be heard. Citing Cronin v. Town of Amesbury, defendants further contend that assuming, arguendo, Hurlbut did not receive due process prior to his dismissal, his due process claim fails unless he can show the State failed to provide him with an adequate post-deprivation remedy.81 F.3d 257, 260 (1st Cir. 1996),
It is undisputed that Hurlbut, as the Assistant Director of the Training School, held a classified position in state service. As such, he had a legitimate entitlement to continued employment, absent substantial grounds for dismissal. A public employee with a constitutionally protected property interest in continued employment "is entitled, before being terminated, to `oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story [either in person or in writing].'" DeCecco v. State of Rhode Island, 593 A.2d 1342, 1344 (R.I. 1991) (citing Cleveland Board of Education v. Loudermill,470 U.S. 532, 545-46, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494, 506 (1985)). It need not be a full evidentiary hearing. Id. A pre-termination hearing "should be an initial check against mistaken decisions — essentially a determination of whether there was reasonable grounds to believe that the charges against the employee are true and support the supposed action." Loudermill, 470 U.S. at 545-46, 105 S.Ct. at 1495. A proceeding pursuant to state law that meets full adversary requirements satisfies due process concerns.Kenyon v. Town of Westerly, 694 A.2d 1196, 1200 (R.I. 1997). Further, a party cannot prevail on a procedural due process claim unless he or she can show that the state failed to provide him or her with an adequate post-deprivation remedy. Cronin, 81 F.3d at 260.
Here, Rhode Island provides Hurlbut with post-deprivation remedies in the form of rights under our merit system law. See G.L. 1956 §36-4-42. Any classified employee aggrieved by an action of an appointing authority may appeal to the PAB for a review or public hearing. Id. The PAB may affirm or reverse the action of an appointing authority. Id. If the appointing authority's decision regarding dismissal is reversed, the employee must be reinstated without loss of compensation or other benefits. Id. Further, if the employee is dissatisfied with the PAB's decision, he or she may appeal to the Superior Court. See G. L. 1956 § 42-35-15.
Picano, exercising his discretionary authority, left Hurlbut to his administrative appeal before the PAB. Hurlbut appealed to the PAB, prevailed, and obtained an order for reinstatement which was not appealed. In this Court's opinion, Hurlbut has not provided competent evidence proving a material disputed fact with respect to Picano and the aforementioned due process entitlements. Further, an arrest and the filing of charges served to assure that discipline was based on reasonable grounds. See, e.g., Gilbert v. Homar,520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). Accordingly, Hurlbut's procedural due process claims fail in this regard.
Hurlbut also claims that the actions of Picano were solely for the purpose of retaliating against him for his exercise of the right of free speech. In support of the motion for summary judgment, Picano argues that Hurlbut's claim fails as a matter of law and fact. Picano contends that Hurlbut's claim fails as a matter of law because it derives from matters of personal interest related to his position as head of the Training School, rather than matters of public concern. On the facts, Picano argues that Hurlbut's dismissal was based on the criminal charge and related circumstances. Finally, Picano contends that the record lacks sufficient evidence to support Hurlbut's assertion that he was retaliated against for constitutionally protected expression.
It is well-settled that the government "may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Adler v. Lincoln HousingAuthority, 544 A.2d 576, 580 (R.I.) (cert. denied, 488 U.S. 968, 109 S.Ct. 496, 102 L.Ed.2d 532 (1988) (quoting Rankin v. McPherson,483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315, 324 (1987)). In determining whether a public employee's speech is protected, a trial court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. (quotingRankin, 483 U.S. at 383, 107 S.Ct. at 2896, 97 L.Ed.2d at 324). However, when a public employee speaks upon matters only of personal interest, not as a citizen upon matters of public concern, "a 
court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick v. Myers, 461 U.S. 138, 14, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).
To prevail on a claim of "unconstitutional retaliation" under § 1983, a public employee "must demonstrate that the speech was protected by the First Amendment" and that the "complained of conduct was a substantial or motivating factor in the defendant's decision to dismiss him or her. Id. at 580 (citation omitted). Thereafter, the public employer has the "burden of proving by a preponderance of the evidence that it would have reached the decision to terminate even in the absence of the plaintiff's exercise of allegedly protected speech." Id. (citation omitted).
It is the role of the trial justice to determine, as a matter of law, whether the speech was protected by the First Amendment. Id. at 581. Thereafter, the jury decides the remaining two elements of a claim: "whether the plaintiff had proven that his or her speech was a substantial or motivating factor in the defendant's actions and whether the defendant had proven that it would have terminated the employee absent the exercise of allegedly protected speech." Id.
As the party opposing the summary judgment motion, Hurlbut "carries the burden of proving by competent evidence the existence of a disputed material fact and cannot rest on the allegations or denials in the pleadings or the conclusions or on legal opinions." MaceraBrothers, 740 A.2d at 1264. Hurlbut's affidavit and deposition indicate that he spoke out against the DiPrete administration on various matters involving the Training School, including the budget, vendor contractors and interference in daily operations.[55] His deposition also indicates that he was not aware of anyone in the DiPrete administration being involved in his termination.[56]
Subsequent to Hurlbut's deposition, an affidavit of Southworth indicates that Picano had suggested that the then-governor's office directed Hurlbut's termination.[57] By deposition, however, Southworth clarified it as an assumption on his part.[58] Picano exercised discretion and discharged Hurlbut based on the soliciting charge. The PAB found that the Hurlbut's termination was not based on substantial grounds because the basis for the dismissal no longer existed once the charge was dismissed by the prosecuting authority.
Having examined the evidence in the light most favorable to Hurlbut, this Court finds no genuine issue of material fact indicating that Hurlbut's termination or Picano's associated complained-of-actions relate to any allegedly protected expression by Hurlbut. Although expression on matters involving "actual or potential wrongdoing or breach of public trust" by government officials constitutes expression on mattters of public concern,Connick v. Myers, 461 U.S. at 148, 103 S.Ct. at 1691, Hurlbut has not proven the existence of a disputed material fact supporting his contention that his allegedly protected speech, rather than the soliciting charge, motivated Picano to discharge him. Accordingly, this claim fails as a matter of law.
 Count III — 42 U.S.C. § 1985
In Count III of the complaint, Hurlbut alleges an equal protection violation, pursuant to § 1985. No further reference to § 1985 appears in the allegations, including which portion of § 1985 the defendants have allegedly violated. However, in paragraph 30 of the complaint, Hurlbut alleges that Picano and others conspired to hide and withhold evidence from the PAB and Hurlbut to his detriment.[59]
Section 1985 Of Title 42 of the United States Code has three subsections which proscribe five types of conspiracies. Corrente v.State of Rhode Island, Department of Corrections, 759 F. Supp. 73, 83 (D.R.I. 1991).[60] The second portion of § 1985(2) and the first part of § 1985(3) relate to "conspiratorial activity that is primarily of state concern."[61] Both of these subsections require that "the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." Id. (citingKush, 460 U.S. at 725, 103 S.Ct. at 1487).
Regarding the second part of § 1985(2) which relates to conspiracies to obstruct justice in state courts, Hurlbut's complaint does not contain any allegation regarding state court. Additionally by definition, a conspiracy involves two or more persons. Further, the PAB is an administrative body. See G. L. 1956 §§ 36-3-10,36-4-42; Tucker, 657 A.2d at 549. Accordingly, insofar as Hurlbut alleges that Picano conspired to withhold evidence from the PAB, such claim fails as a matter of law. See, e.g., Solitani v. Smith,812 F. Supp. 1280, 1294 (D.N.H. 1993) (interference or obstruction of administrative proceedings is not redressable under § 1985(2)).
Section 1985(3) provides a remedy "exclusively for deprivations of the equal protection of the law or of the privileges and immunities guaranteed under the law." Salisbury v. Stone, 518 A.2d 1355, 1361 (R.I. 1986). To state a claim under the first portion of42 U.S.C. § 1985(3), a claimant must allege that a conspiracy was predicated upon a racial or suspect class-based, invidiously discriminatory animus. Id. Hurlbut's complaint does not contain any such allegation. See, e.g., LaManque v. Mass. Department ofEmployment Training, 3 F.Supp.2d 83, 92 (D.Mass. 1998) ("Whistleblowers are not a `cognizable class' for purposes of § 1985(3)."); Hicks v. Resolution Trust Corp., 970 F.2d 378, 382 (7th Cir. 1992) ("[P]urported status as whistleblower does not entitle one to civil rights protection under 1985(3)"). Further, in this Court's opinion, as the party opposing summary judgment, Hurlbut has not carried his burden of proving by competent evidence the existence of a disputed material fact regarding a § 1985 conspiracy. Accordingly, Hurlbut's § 1985 claim fails as a matter of law.[62]
 Whistleblower's Act
In Count II of the complaint, Hurlbut alleges a whistleblower's claim. Specifically, Hurlbut avers that, in September of 1989, Picano created a new position of Associate Director for the Training School and thereafter refused to consider or appoint Hurlbut to said position notwithstanding that the new position had substantially the same duties as Hurlbut's former position, Assistant Director. Hurlbut contends Picano's actions were intended solely to circumvent the PAB decision ordering Hurlbut reinstated to the Assistant Director position. Hurlbut alleges that Picano retaliated against him because of his "exercise of free speech" and his input "to members of the Rhode Island Legislature and its legislative bodies regarding practices, policies and procedures at the Training School to include opinions as to why the Training School should not be relocated to the grounds of the Ladd School in Exeter, Rhode Island." Complaint, ¶ 15.
The Rhode Island Whistleblower's Act, G. L. 1956 § 36-15-1 et seq.
(Whistleblower's Act), was enacted by Public Laws 1984, chapter 137 and amended by Public Laws 1988, chapter 649. Although the statute was repealed in its entirety by Public Laws 1995, chapter 308, it was simultaneously reenacted as Chapter 50 of Title 28 of the General Laws. Because the plaintiff brought this action in 1990, Chapter 15 of Title 36 is the operative statute in this dispute.[63]
The Whistleblower's Act provides recourse for an employee discharged for reporting a known violation of federal or state laws by an employer. See, e.g., Picard v. State of Rhode Island,694 A.2d 754 (R.I. 1997). Section 3 of the Whistleblower's Act provides:
 "An employer shall not discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment 1) because the employee, or a person acting on behalf of the employee, reports or is about to report to a public body, verbally or in writing, a violation, which the employee knows or reasonably believes has occurred or is about to occur, of a law or regulation or rule promulgated under the law of this state, a political subdivision of this state, or the United States, unless the employee knows or has reason to know that the report is false, or 2) because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action."
The PAB hearings regarding Hurlbut's termination occurred on 9/21/89, 11/21/89, 12/14 and 12/21/89, and 2/13 and 2/15/90. After the hearings which concluded on February 15, 1990, the PAB decided unanimously in favor of Hurlbut. According to the PAB, upon disposition of the criminal charges against Hurlbut via outright dismissal by the prosecuting authority, the basis for the dismissal no longer existed.[64] The PAB decision on or about March 12, 1990 ordered Hurlbut's reinstatement to his former position.[65]
On October 8, 1989, after Hurlbut's dismissal and before his reinstatement pursuant to the 1990 PAB order, the position of Associate Director for the Training School was created as a part of a departmental reorganization.[66] Patrick and Bohan had advised Picano that Hurlbut should be reinstated and that the creation of an Associate Director position was not appropriate and would not stand a legal test.[67] Patrick opined that Picano created the Associate Director position to vacate the authority of Hurlbut's position as Assistant Director.[68]
The Associate Director position was filled on December 31, 1989.[69] When Hurlbut was reinstated to his position as Assistant Director, both positions continued in existence with Hurlbut then under the command of the new Associate Director.[70] The person who was hired as Associate Director, then-Supervisor of Hurlbut, had six months of service in a correctional facility, none of them at the Training School.[71]
During the PAB hearing, Picano testified that, prior to the March 28, 1989 termination of Hurlbut, he had not consulted with anyone in the governor's office regarding the Hurlbut incident.[72] However, Bradford E. Southworth, then-Personnel Administrator for the State of Rhode Island, testified, during deposition, that Picano consulted him prior to Hurlbut's dismissal from state service.[73] By affidavit, Southworth states Picano consulted him on two or more occasions during the period of 1989 and 1990 as to whether or not the DCF could uphold the termination of Hurlbut based solely on the February 1989 arrest.[74] Southworth also states that, on at least one occasion, Picano acknowledged that he also knew the termination could not be upheld but that people "from above" had instructed him to proceed on that course.[75] Southworth assumed that Picano was referring to the Governor's office.[76] Picano states that he was never ordered or requested by then-Governor DiPrete or any of his staff to dismiss Hurlbut or to take any adverse action against him[77]
On March 21, 1990, Hurlbut testified in the Federal Court case involving the Training School regarding the DiPrete administration's "`blocking [Hurlbut's] efforts to come into compliance starting in 1987 and the administration playing Russian Roulette' with the safety of residents and staff."[78]
During the state's financial crisis of 1991, Hurlbut was laid off.[79] He appealed the decision to the PAB.[80] According to the PAB, the job specifications of the Associate Director and the Assistant Director were "so nearly identical as to prevent being able to tell the difference."[81] Regarding Hurlbut's layoff, the PAB, in its March 25, 1992 decision, stated "[w]hile there is no conclusive evidence to ascertain the intentions of [the Department of Children, Youths and Families (DCYF, formerly DCF)], there is sufficient evidence to make it obvious that economics and comparative abilities were not the reasons" for Hurlbut's layoff and ordered Hurlbut's reinstatement.[82]
To prevail against summary judgment on his Whistleblower's claim, Hurlbut must set forth genuine issues of material fact regarding retaliatory discharge or other discrimination for (i) his reporting to a public body a known or reasonably believed violation of the law or (ii) his participation in an investigation or court action. See G.L. 1956 §§ 36-15-(2), 36-15-3. The statute does not provide relief for expressing opposition publicly. See Picard, 694 A.2d at 755. Accordingly, Hurlbut's claims related to public expression of opposition to the potential relocation of the Training School or other Training School issues fail. However, to the extent that Hurlbut alleges he was discriminated against for his being critical of hiring practices, the awarding of Training School contracts, and his testifying in Federal Court, he sets forth sufficient issues of material fact regarding retaliation or discrimination. Accordingly, the State's motion for summary judgment on the Whistleblower count is denied.
The Whistleblower's Act provides for a cause of action against an employer, not individual state agents. See G.L. 1956 § 36-15-3,supra. Accordingly, as a matter of law, Picano's motion for summary judgment on the Whistleblower's count as to him individually is granted.
 Claims for Punitive Damages
As the State correctly argues, any award of punitive damages against a state is contrary to public policy. Graff v. Motta,695 A.2d 486, 490 (R.I. 1997). See also City of Newport v. FactConcerts, Inc., 453 U.S. 247, 263, 101 S.Ct. 2748, 2757, 69 L.Ed.2d 616, 629 (1981) (courts generally view punitive damages as "contrary to sound public policy, because such awards would burden the very citizens for whose benefit the wrongdoer was being chastised"). Specifically, the Whistleblower's Act does not provide for an award of punitive damages. It provides for "appropriate injunctive relief, or actual damages, or both." G. L. 1956 § 36-15-4(a). The statute provides for reinstatement of the employee, payment of back wages, full reinstatement of fringe benefits and seniority rights and/or actual damages, as well as litigation costs if deemed appropriate by the court. G.L. 1956 § 36-15-5.
It is well-settled that when statutory language is unambiguous and expresses a clear meaning, a court must interpret the statute literally and give the words their plain and obvious meaning.Bandoni v. State of Rhode Island, 715 A.2d 580, 584 (R.I. 1998). Furthermore, when a statute "establishes rights not cognizable at common law, that statute is `subject to strict construction.'" Id.
(quoting Accent Store Design, Inc. v. Marathon House, Inc.,674 A.2d 1223, 1226 (R.I. 1996)). Accordingly, in the absence of a provison for punitive damages within the Whistleblower Act, Hurlbut's claim thereunder fails.
 For the foregoing reasons, the defendants' motion for summary judgment is granted on
 1) All claims under 42 U.S.C. § 1983, 1985 and 1988 against the State of Rhode Island and Joseph Picano, in his official capacity and individually;
2) The Whistleblower claim against Joseph Picano individually; and
 3) The claims for punitive damages against defendants.
 Motion to Amend
Hurlbut filed a motion to amend the complaint after this Court had heard defendants' summary judgment motion and plaintiff's objection thereto. Hurlbut contends that the proposed amended complaint, like the original complaint, sets forth two counts of violation of Hurlbut's civil rights under 42 U.S.C. § 1983 and one count of violation of the Whistleblower's Act. The amended complaint, according to Hurlbut, has removed the names of the four defendants dismissed from the matter and has "supplemented the factual allegations based on the discovery process." Memo in Support of P.'s Memo to Amend Complaint at 1. In amending the allegations, Hurlbut, in part, seeks to introduce former Governor DiPrete's (DiPrete) name and administration into the subject action. Hurlbut argues that the proposed amended complaint presents neither a new theory of recovery nor any allegations on which the defendants have not already conducted extensive discovery. Hurlbut further contends that the burden is upon the party opposing such a motion to show that it would incur substantial prejudice if the motion were granted.
The defendants counter that the interests of justice and judicial economy require denial of Hurlbut's motion. Specifically, defendants contend the following: the complaint was filed a decade ago; defendant's summary judgment motion was filed in July of 1998; discovery was closed in the summer of 1999 after having been extended twice; and that a trial date had been contemplated. According to the defendants, Hurlbut lacks a good faith basis to recast his allegations approximately a decade into this action, particularly after being silent about the DiPrete allegations during years of administrative and PAB hearings. The defendants rely on Foman v.Davis, described as the leading case on Rule 15 amendment,[83]
wherein the Supreme Court states that "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment etc." constitute sufficient grounds for denial of amendments. 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Relying on the Seventh Circuit decision Glatt v. ChicagoPark District, the defendants further argue, that:
 "The court not only may but should consider the likelihood that the new claim is being added in a desperate effort to protract the litigation and complicate the defense; its probable merit; whether the claim could have been added earlier; and the burden on the defendant of having to meet it."
87 F.3d 190, 194 (7th Cir. 1996).
In relation to the instant matter, Rule 15 of the Superior Court Rules of Civil Procedure (Rule 15) requires Hurlbut to obtain leave of court and provides that leave shall be freely given when justice so requires. It is well-established that "the decision about whether to permit a party to amend his or her pleading is one that is left exclusively to the sound discretion of the trial justice and [the Supreme Court] shall not disturb that decision unless it constitutes an abuse of discretion." Bresnick v. Baskin, 650 A.2d 915, 916 (R.I. 1994) (per curiam) (quoting Normandin v. Levine, 621 A.2d 713, 715 (R.I. 1993)). As Hurlbut previously argues, a motion to amend usually is not foreclosed once a party has moved for summary judgment. Babbsv. John Hancock Mutual Life Insurance Co., 507 A.2d 1347, 1349 (R.I. 1986).[84]
As our Supreme Court recognizes, "[t]he most common reasons for denying leave to amend are that the amendment will result in undue prejudice to the other party, is unduly delayed, is offered in bad faith or for a dilatory purpose, or that the party has had sufficient opportunity to state a claim and has failed."[85] Faerber v.Cavanagh, 568 A.2d 326, 329 (R.I. 1990) (quoting 3 Moore's, FederalPractice ¶ 15.08(4) at 15-69-15-75 (2d ed. 1988)). Although mere delay is not enough to deny an amendment, undue and excessive delay that causes prejudice to the opposing party is grounds for denial.[86] Id. Moreover, a trial justice's discretional authority to deny delayed amendments to pleadings "must always be placed within the scope of the spirit of the Superior Court Rules of Civil Procedure: `They shall be construed to secure the just, speedy, and inexpensive determination of every action.'" Id. (quoting Super. R. Civ. P. 1).
Regarding undue delay, our Supreme Court adheres to the First Circuit's approach that when "`a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some `valid reason for his [or her] neglect and delay.'" Id. (quoting Carter, 684 F.2d at 192). Delay of twelve years constituted undue and excessive delay. Id. at 330. Additionally, if allowed, the amendment would substantially prejudice the opposing party because it would have involved a considerable amount of new discovery and further delay of the civil trial. Id. Accordingly, in Faerber our Supreme Court held that denial of the amendment was within spirit of the Superior Court Rules of Civil Procedure and was not an abuse of discretion. Id.
Because the proposed amended complaint before this Court does not involve precisely the same allegations as the complaint, this Court cannot find that to allow the amendment would not require defendants to perform additional discovery and to alter their planned trial strategy and tactics, thereby requiring additional time and resources to prepare for trial. In this Court's opinion, defendants would be sufficiently prejudiced thereby.[87] Further, although Hurlbut proffers that the proposed amendment results from discovery, this Court believes Hurlbut was aware, or should have been aware, of information tending to support the proposed amendment well before April 2000. Accordingly, this Court finds Hurlbut's argument without merit. The plaintiff's motion for leave to file an amended complaint is hereby denied.
Counsel shall prepare an appropriate order and judgment for entry.
[1] The subject and only remaining defendants are the State of Rhode Island and Joseph Picano, individually and in his capacity as the Director of the Rhode Island Department for Children and Their Families (respectively, State and Picano or collectively, defendants). By stipulation filed July 23, 1997, this civil action was dismissed against former defendants James Patrick, Timothy Dutra, Gail Parente, and Peter DeLisi.
[2] D. Exh. C at 5.
[3] Id. at 11.
[4] D. Exh., Aff. of Picano at 1.
[5] P. Exh. 11, Aff. of Hurlbut.
[6] Id. at 2.
[7] D. Exh. B.
[8] Id.
[9] P. Exh. 9 at 20.
[10] Id.
[11] D. Exh C at 1.
[12] Id.
[13] Id. On February 15, 1989, the female involved in the subject incident, Star Price (Price), plead nolo contendere to the charge of loitering for prostitution and was sentenced to one year, suspended, and one year probation. D. Exh. F.
[14] Id. at 1-2.
[15] Id. at 2.
[16] Id.
[17] Id. DCF's Administrative Hearing Procedure provides:
"If the hearing is postponed: . . .
b. At the Union's request — employee is placed on leave without pay . . . ." P. Exh. 7 at 2-3.
[18] D. Exh. C at 3.
[19] Id. The Family Court order dated May 9, 1983 indicated that Price had been ordered to DCF's Juvenile Diagnostic Center in May of 1983, when she was a minor. D. Exh. G.
[20] D. Exh. C at 19, 22.
[21] Id. at 20.
[22] Id. at 21.
[23] Id. at 22.
[24] Id. at 21.
[25] Id. at 22.
[26] D. Exh. D.
[27] P. Exh. 3 at 35.
[28] Id.
[29] D. Exh. H.
[30] D. Exh. I.
[31] D. Exh. L at 50.
[32] D. Exh. E at 1. G. L. 1956 § 36-4-42 provides, in relevant part, that:
"Any state employee with provisional, probationary or permanent status who feels aggrieved by an action of an appointing authority resulting in a demotion, suspension, layoff, or dismissal or by any personnel action which an appointing authority might take which causes the person to believe that he or she had been discriminated against because of his or her race, sex, age, disability, or his or her political or religious beliefs, may, within thirty (30) calendar days of the mailing of the notice of that action, appeal in writing to the personnel appeal board for a review or public hearing . . . ."
[33] P. Exh. 2 at 29.
[34] D. Exh. E at 2. The PAB hearings occurred on 9/21/89, 11/21/89, 12/14 and 12/21/89, and 2/13 and 2/15/90. Id. at 1.
[35] P. Exh. 5 at 57.
[36] D. Exh. E at 2-3.
[37] Id. at 2.
[38] Id. at 4.
[39] D. Exh. J. Therein, the PAB, addressing Hurlbut's request for a pay grade increase, noted that Hurlbut had no automatic right to a promotion as such decision was discretionary. Id. Further, the PAB stated, "based upon the speculative nature of this claim, it is hereby denied." Id. The PAB does not reference a specific position when addressing the pay grade increase and promotion.
[40] Aff. of Picano at 2.
[41] Id.
[42] P. Exh. 14 at 41-42.
[43] Id. at 42.
[44] P. Exh. 12 at 2.
[45] Id. at 1.
[46] Id.
[47] Id. at 5.
[48] Id. at 3.
[49] State v. Personnel Appeal Board, 1995 WL 941441 at 1 (R.I. Super. 1995).
[50] Id.
[51] Id. at 3.
[52] D. Exhibits A, E. and J.
[53] G. L. 1956 § 36-3-10 provides, in relevant part:
 (a) The personnel appeal board shall hear appeals:
 (2) By any person with provisional, probationary or permanent status in a position in the classified service who has been discharged, demoted, suspended, or laid off by any appointing authority.
[54] Section 1983, entitled "Civil action for deprivation of rights," states:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress . . . ."
42 U.S.C.S. 1983 (Law. Co-op 1994).
Plaintiff also seeks punitive damages, and pursuant to 42 U.S.C.S. § 1988, attorneys fees and costs.
[55] P. Exh. 11, D. Exh. N at 114.
[56] D. Exh. N at 14, 30-31.
[57] P. Exh. 16.
[58] D. Exh. Q at 31, 35-37.
[59] Hurlbut contends said evidence consisted of an interview with Price. Complaint, ¶ 30.
[60] Three of the five types of § 1985 conspiracy "relate to institutions and processes of the Federal Government-federal officers, § 1985(1); federal judicial proceedings, the first portion of § 1985(2); and federal elections, the second part of § 1985(3)."Id. (quoting Kush v. Rutledge, 460 U.S. 719, 724, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983). The first part of § 1985(2) prohibits conspiracies to injure a person or his property on account of testifying or attending a proceeding in the United States court. Id.
Hurlbut's complaint fails to make a claim under these three parts of § 1985.
[61] The second portion of § 1985(2) applies to conspiracies to obstruct the course of justice in state courts; and the first part of § 1985(3) provides a cause of action against conspirators who "go in disguise on the highway or on the premises of another." See Kush, 460 U.S. at 725.
[62] Section 1988 of Title 42 of the United States Code provides for an award of "reasonable attorney's fee as part of costs" to the prevailing party in civil rights action. Salisbury, 518 A.2d at 1361. Hurlbut's claims for attorney's fees under § 1988 and punitive damages fall with his § 1983 and § 1985 claims. Accordingly, this Court need not address the asserted defenses of qualified immunity and discretionary immunity.
[63] The Whistleblower's Act contains the following definitions: "Employee" means, in relevant part, "a person employed by any department, agency, commission, committee, board, council, bureau or authority or any subdivision thereof of state or municipal government." G.L. 1956 § 36-15-2(1) "Employer" means any department, agency, commission, committee, board, council, bureau or authority or any subdivision thereof of state or municipal government. G.L. 1956 § 36-15-2(2). "Public body" means all of the following:
(i) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of state government,
(ii) An agency, board, commission, council, member, or employee of the legislative branch of state government. . . .
(vi) The judiciary and any member or employee of the judiciary." G.L. 1956 § 36-15-2(4).
[64] D. Exh. E at 2.
[65] Id. at 4.
[66] Aff. of Picano at 2.
[67] P. Exh. 14 at 41-42.
[68] Id. at 42.
[69] Aff. of Picano at 2.
[70] P. Exh. 12 at 2.
[71] Id. at 3.
[72] P. Suppl. Memo, Exh. B at 48-49.
[73] P. Suppl. Memo, Exh C at 23-24.
[74] P. Exh. 16.
[75] Id.
[76] Id.
[77] Aff. of Picano at 2.
[78] P. Exh. 11.
[79] P. Exh. 12 at 1.
[80] Id.
[81] Id. at 3. Hurlbut also submits an April 1993 memorandum, wherein the DCYF addressed the position of Superintendent at the Training School, a position overseeing the daily management of the Training School. P. Suppl. Memo, Exh. A. Therein, then-Director of DCYF Linda D'Amario Rossi noted that any enlarging of the Superintendent job description "would result in a position which looks suspiciously like the previous positions of Assistant or Associate Director — positions from which a large number of individuals were laid off." Id. at 2. "If the job duties are expanded to include functions [Hurlbut] previously performed or currently performs, the job will be equivalent to the position from which he was terminated and then laid off" thereby giving Hurlbut an entitlement to the job. Id. "For reasons which led to his termination and accompanying public notoriety, we could anticipate significant problems with public perception if Mr. Hurlbut were reinstated." Id. "Additionally, Mr. Hurlbut continues to pursue legal remedies associated with the layoff." Id. "This is all notwithstanding the fact that he is performing well in his current job and could probably admirably perform the functions of Superintendent." Id.
[82] P. Exh. 12 at 5.
[83] 3 Moore's, Federal Practice ¶ 15.15(1) at 15-40, n. 1 (3rd ed. 1999).
[84] But see Mainella v. Staff Builders Industrial Services, Inc.,608 A.2d 1141 (R.I. 1992).
[85] "While the courts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party, * * * it is clear that `undue delay' can be a basis for denial." Hayes v. New England Millwork Distributors, Inc.,602 F.2d 15, 19-20 (1st Cir. 1979) (citing Foman v. Davis, 371 U.S at 182, 83 S.Ct. at 230). "Especially where allowing the amendment will cause further delay in the proceedings, `undue delay' in seeking the amendment may be a sufficient basis for denying leave to amend."Acosta-Mestre v. Hilton Intern. of Puerto Rico, 156 F.3d 49, 52 (1st Cir. 1998) (citing Foman, 371 U.S. at 178, 83 S.Ct. 227).
[86] See 3 Moore's, Federal Practice ¶ 15.08(4); Carter v.Supermarkets General Corp., 684 F.2d 187, 192 (1st Cir. 1982)). Even if delay is not per se a sufficient reason to deny a motion for leave to amend, sufficient prejudice to the non-movant results from a re-opening of discovery with additional costs, a significant postponement of trial, and a likely major alteration in trial strategy and tactics. Acosta-Mestre, 156 F.3d at 52. Grant v. NewsBoston Group, Inc., 55 F.3d 1, 6 (1st Cir. 1995) (finding prejudice from undue delay where discovery would have to be re-opened and trial preparation was underway).
[87] See Hayes 602 F.2d at 20. See also Tiernan v. Blyth, Eastman,Dillon Co., 719 F.2d 1, 4-5 (1st Cir. 1983) (finding prejudice to opponent of late-filed motion to amend even where further discovery was unnecessary; the additional claims "may well have affected defendants' planned trial strategy and tactics" and would likely have "required additional time to prepare for trial").