## DEPARTMENT OF CORRECTION OF the STATE OF RHODE ISLAND

v.

**Joe Louis TUCKER, Jr., et al.**

No. 93–470–M.P.

Supreme Court of Rhode Island.

April 24, 1995.

George Cappello, Cranston, Stephen Robinson, Asquith, Mahoney & Robinson, Providence, for plaintiff.

Cynthia Hiatt, Com'n for Human Rights, Alton W. Wiley, Providence, for defendants.

### OPINION

WEISBERGER, Chief Justice.

This case comes before us on a petition for certiorari filed by the Department of Corrections of the State of Rhode Island (department) seeking review of a judgment of the Superior Court affirming a decision and order of the Rhode Island Commission for Human Rights. We grant the petition and quash the decision of the Superior Court. The facts insofar as pertinent to this petition for certiorari and as found to be essentially undisputed by the justice of the Superior Court are as follows.

The respondent, Joe Louis Tucker, Jr. (Tucker), a man of African–American descent, applied for a position with the department as a correctional officer. He was not

hired. On June 30, 1987, Tucker filed a complaint with the Rhode Island Commission for Human Rights (commission), alleging racial discrimination. This charge was resolved on November 5, 1987, by a negotiated settlement. The settlement provided that Tucker could reapply for the position and that his application would be treated in the same manner as that of any other candidate for the position of correctional officer. Tucker did reapply and was accepted for enrollment in the department's training academy. He completed the course successfully, and on March 13, 1988, Tucker began his employment as a probationary correctional officer in the medium-security section of the Adult Correctional Institutions.

Tucker's initial probationary reports written between May 2, 1988, and May 6, 1988, were generally favorable. During that same month he was transferred from the medium-security to the maximum-security section. In that capacity he came under the supervision of Associate Director William Quattrocchi (Quattrocchi). Shortly after Tucker's transfer, his former supervisor, Associate Director Ronald Brule, criticized Tucker because he had booked several inmates in the last two weeks of his assignment to medium security and the two inmates had filed grievances against Tucker.

On June 21, 1988, Quattrocchi wrote a memorandum to Tucker that he had violated established procedures in seeking overtime work in the women's division, a facility to which he had neither been assigned nor submitted a bid for a position. At some time before Tucker's second probationary report, dated July 6, 1988, he urinated in the yard of the facility while he was supervising inmates. The second set of probationary reports was unfavorable, and Quattrocchi found him unsuitable to continue as an officer. Among other things Tucker had been accused by Captain Barbara Headen (Headen), a female officer of African–American descent, of watching television in an inmate's cell. Tucker admitted to the urination incident but denied that he had watched television in the inmate's cell and asserted that he had entered the cell in order to persuade two inmates to leave.

On July 12, 1988, Quattrocchi filed a written reprimand for the urination and television incidents. This reprimand was also critical of Tucker for going on sick leave after beginning a shift, when he had been denied personal leave for the day before he was due to go on annual military-reserve leave.

Tucker's third and final probationary reports were due on September 5, 1988, since his six-month probationary period would expire on September 13, 1988. Headen and Lieutenant Frank Cook signed their reports on September 9, 1988. Captain James Vierra and Quattrocchi signed their reports on September 12, 1988. All reports later showed that they had been received in the Deputy Assistant Director's office by September 6. None of the supervisors rated Tucker highly, and Quattrocchi concluded that he could not recommend Tucker for permanent status as a correctional officer. On September 9, 1988, Quattrocchi formally recommended that Tucker not be retained in state service. On September 13, 1988, Tucker was dismissed from the position of correctional officer effective September 14, 1988, because of unsatisfactory job performance during his probationary period. Within thirty days of his dismissal from his employment, Tucker filed an appeal with the Personnel Appeal Board of the State of Rhode Island (board) in which he contended that he was the victim of discrimination and retaliation by the department and that his discharge at the conclusion of his probationary status was therefore improper pursuant to G.L.1956 (1984 Reenactment) § 36–4–42, as amended by P.L.1986, ch. 104, § 1. This section authorizes the board to reinstate any state employee who has been discriminated against for a host of reasons including race. It may also review the dismissal by an appointing authority of any employee during the probationary period "for reasons relating to the employee's qualifications or for the good of the service." Section 36–4–28.

On August 2, 1990, the board concluded a public hearing and issued a decision that denied and dismissed Tucker's appeal. This decision is set forth and marked as exhibit A, attached to this opinion, and made a part thereof. This decision was not appealed.

While Tucker's appeal was pending before the board, he filed a complaint with the commission on April 28, 1989, alleging that the department, had discriminated against him because of his race and color and because he had filed a previous charge of discrimination in violation of the Fair Employment Practices Act, G.L.1956 (1986 Reenactment) § 28–5–7, as amended by P.L.1988, ch. 310, § 2.

At a hearing before the commission on May 17, 1990, counsel for the department, in his opening statement, brought to the commission's attention that Tucker had appealed to the board and that it (the board) was considering the same factual issues that had been brought before the commission. He asked the commission to abstain from hearing the complaint and to allow the board to decide the matter, which was within its jurisdiction. The commission declined to abstain and took the position that the pending appeal before the board did not preclude its hearing the same issues because, it indicated, the board lacked jurisdiction to consider the issue of retaliation. Both the board and the commission were aware that hearings were going forward before both tribunals. In fact, transcripts from each tribunal were introduced from time to time before the other tribunal.

On June 29, 1992, the commission issued a decision ordering that Tucker be reinstated and finding that although there was no proof of racial discrimination, the department had discharged Tucker in retaliation for his having filed a complaint prior to his engagement as a probationary employee. In commenting upon the prior appeal pending before the board, in its decision of July 29, 1992, the commission made the following statement:

"The respondent argued that the Commission should not proceed when a hearing was pending before the Personnel Appeal Board. Rhode Island General Laws Section 36–4–42 gives the Personnel Appeal Board the authority to hear and decide allegations of race discrimination made by state employees. Rhode Island General Laws Section 28–5–6(2)(A) defines the state as a covered employer and Title 28, Chapter 5 gives the Commission the authority to hear and decide cases of race discrimination in employment. The statutes do not prohibit simultaneous hearings so the Commission sees no conflict in its proceedings. The Personnel Appeal Board process is comparable to a grievance proceeding under a union contract and the U.S. Supreme Court has held that actions under Title VII of the Civil Rights Act of 1964 are not precluded by previous arbitration. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147, 7 CCH EPD Para. 9148 (1974). Further the Personnel Appeal Board does not have jurisdiction to consider allegations of retaliation so there is clearly no duplication of hearings with respect to that issue. The existence of Personnel Appeal Board hearings does not justify a cessation of Commission hearings."

It is undisputed that for some unexplained reason the department did not file with the commission a copy of the board's decision. Nevertheless, the department did file with the Superior Court a copy of the board's decision dated February 19, 1991, on October 28, 1992. The action in the Superior Court seeking review of the commission's decision was begun July 23, 1992. A stay of the commission's order was issued August 31, 1992. The commission's record was certified to the Superior Court on November 24, 1992. Briefing was completed on March 26, 1993, and the case was assigned to a Superior Court justice for decision on April 21, 1993. Consequently, the decision of the board was filed with and brought to the attention of the Superior Court long before briefing was completed and many months before the case was assigned to a justice for decision.

■ Nevertheless, the trial justice declined to consider the issue of res judicata that had been raised before the court. The trial justice suggested that he could not consider the board's decision since not only had that decision not been presented to the commission, but neither had the issue of res judicata been urged before the commission. We respectfully disagree with the trial justice that the issue of res judicata was not properly submitted to the court. It is obvious from the commission's opinion that it did

not believe the personnel appeal board had jurisdiction to consider allegations of retaliation. Indeed, the commission suggested that the personnel appeal board was analogous to an arbitration panel and that its determination would not preclude a parallel or successive adjudication by the commission. Thus a filing of the board's decision with the commission would have been a futile act. Although the commission was well aware that Tucker had invoked the jurisdiction of the board prior to its filing a complaint with the commission, it went forward to final decision in full confidence that the commission alone had jurisdiction to determine the controversy. This opinion was erroneous.

Consequently it was only before the Superior Court that the department could raise the issue of res judicata with an expectation that this defense would be considered. The filing of the board's decision on October 28, 1992, was timely in respect to the briefing process and certainly timely in respect to the trial justice's opportunity to consider the issue for the first time in an objective and appropriate manner.

■ The board is an independent agency of the state designed to protect the interests of state employees under the merit system. The members of the board are appointed by the Governor with the advice and consent of the Senate (G.L.1956 (1990 Reenactment) § 36–3–6) in just the same manner as are members of the commission (§ 28–5–8). Both the board and the commission are quasi-judicial agencies of the state. The most significant difference between the commission and the board is that the commission's jurisdiction covers all nonfederal public and private employers and employees within the state, whereas the board's jurisdiction covers only classified employees of the State of Rhode Island. Within the board's jurisdiction over state employees, it has the right and the duty to consider not only racial discrimination but any other reason for discharge that would not meet the requirements of substantial grounds. *See Hardman v. Personnel Appeal Board,* 100 R.I. 145, 211 A.2d 660 (1965); *Aniello v. Marcello,* 91 R.I. 198, 162 A.2d 270 (1960). *See also Guarino v. Department of Social Welfare,* 122 R.I.

583, 410 A.2d 425 (1980). This blanket coverage would certainly include the issue of retaliation for filing a previous complaint. Indeed, the board in its decision specifically considered the issue of retaliation and found that Tucker's discharge was not due to bias based upon retaliation.

Tucker chose to appeal to the board and was not hailed before that tribunal involuntarily. The board had complete jurisdiction to consider all Tucker's claims of discrimination, racial and retaliatory. Its decision would be final except for appeal to the Superior Court through the Administrative Procedures Act (G.L.1956 (1993 Reenactment) § 42–35–15). This is substantially the same situation in respect to appeals from decisions of the commission, pursuant to G.L.1956 (1986 Reenactment) § 28–5–28.

■ Rhode Island has long accepted and applied the doctrine of res judicata in respect to decisions of the courts of this state and the courts of other states. Generally the doctrine of res judicata makes prior judgments conclusive in regard to any issues that were raised or that could have been raised before the first tribunal. *Rhode Island Student Loan Authority v. NELS, Inc.,* 600 A.2d 717 (R.I.1991); *Mulholland Const. Co. v. Lee Pare & Associates, Inc.,* 576 A.2d 1236 (R.I. 1990); *Title Investment Co. of America v. Fowler,* 504 A.2d 1010 (R.I.1986); *Hebert v. Ventetuolo,* 480 A.2d 403 (R.I.1984).

■ The same rule should apply to the decision of a quasi-judicial administrative tribunal as to the judgment of a court. *Restatement (Second) Judgments,* ch. 6, § 83 (1982). The restatement suggests that such an adjudicative determination will be conclusive as long as the administrative tribunal grants to the parties substantially the same rights that they would have if the matter were presented to a court. There is no question that both the board and the commission make provisions for the presentation of evidence and legal argument similar to that which would be presented in a judicial tribunal. Judicial review is available under the Administrative Procedures Act in respect to the board and pursuant to § 28–5–28 is available in respect to the commission. Conse-

quently, we are of the opinion that in this case the prior decision of the board should have been given preclusive effect upon any issue that was litigated or could have been litigated before that tribunal.

Since the decision of the board was not appealed, it became a final decision and was binding on both Tucker and the department. The parallel litigation before the commission should have terminated upon the filing of the decision by the board.

It is true that the department did not file the decision before the commission, and therefore, the commission may not be faulted for going forward with its hearing. However, the decision was presented to the Superior Court in a timely manner, and the trial justice should have determined the legal effect of the final decision of the board under the principles of res judicata. This was a pure issue of law and required no evidence other than the filing of the undisputedly authentic decision of the board. Since the legal issue is clear, the trial justice erred in not considering it and further, in not giving it preclusive effect.

We hold that the decision of the board was conclusive in regard to all the allegations of discrimination that were raised or that could have been raised. This broad area of preclusion included the issue of retaliation that was rejected by the board. Because we are of the opinion that the res judicata issue is determinative in respect to this petition for certiorari, we need not reach the other issues raised by the department in support of its petition.

For the reasons stated, the petition for certiorari is hereby granted. The decision of the Superior Court is quashed. We remand the papers in the case to the Superior Court with our decision endorsed thereon and with directions both to reverse the decision of the Rhode Island Human Rights Commission and to dismiss the complaint of Joe Louis Tucker that had been filed with that commission.