DECISION
This is an administrative appeal of the July 24, 2001 decision of the Coastal Resources Management Council (CMRC), approving the application of Defendant John Brendan Wynne (Wynne) to construct a condominium development near the Plaintiffs' (Wolffs) property in the City of Warwick. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
Wynne first initiated an application with the CMRC in 1998 to construct a condominium development consisting of twenty-eight (28) two bedroom condominiums in fourteen (14) buildings to be located on Old Forge Road in Warwick, Rhode Island.[1] The Wolffs live near the proposed development and have an interest on its impact on the coastal environment.
Wynne sought a Preliminary Determination (PD) from the CRMC staff prior to submission of the formal application.[2] As a result of Wynne's request for a Preliminary Determination, the CRMC staff recommended a one-hundred (100) foot buffer zone measured inland from the inland edge of the coastal feature and a one hundred twenty-five-foot (125) setback from the inland edge of the coastal feature. See CRMC Preliminary Determination. Wynne followed the recommendations of the CRMC staff and filed his formal application. The Wolffs then filed an objection to the application, and the Chairman of the CRMC appointed a Subcommittee to investigate.
The Subcommittee held public hearings (May 11, 1999, May 19, 1999, July 22, 1999, August 12, 1999, November 16, 1999) and a workshop on May 23, 2000. During the hearings Wynne made numerous revisions to the proposal. As a result of these revisions, the Subcommittee recommended to the full Council that the revisions amounted to a new and separate application and should be treated as such. The full Council then adopted the findings of the Subcommittee in its final Decision on July 26, 2000.
The final Decision of July 26, 2000 dismissed the application without prejudice and recommended that Wynne resubmit a new proposal with the CRMC as a new file number. Additionally, the Council determined the refiled application would be subject to the rules and regulations of the CRMC that existed at the time of its initial application. Throughout the public hearings, the Wolffs participated through their legal counsel and objected to the proposal.[3]
Subsequently, Wynne refiled the application and scaled down the project to propose construction of twenty (20) condominium units in ten (10) duplex buildings. Another Subcommittee was formed with different CRMC members, and public hearings were held on October 25, 2000 and November 30, 2000. Additionally, a workshop was held on October 7, 2001. During the Subcommittee hearings, the CRMC staff urged the Council to further scale down the project to seven (7) buildings with fourteen (14) condominium units. Wynne presented experts who testified that the impact of the proposed development with the twenty (20) condominium units in ten (10) duplex buildings was far less than the maximum allowed under CRMC rules. The CRMC staff conducted their own calculations which conflicted with the testimony of Wynne's experts.
The Subcommittee issued a written recommendation containing 44 Findings of Fact which detailed the conflicting evidence and their ultimate reliance on the opinions and calculations performed by the CRMC staff. The Subcommittee found that the calculations prepared by the CRMC staff were more credible than those provided by Wynne's experts. Consequently, the Subcommittee recommended to the full Council that the project be reduced from ten (10) duplex buildings to seven (7).
On May 8, 2001 the full sixteen (16) member CRMC Council met and took under consideration the record and recommendation of the Subcommittee. The full Council also heard new evidence from Wynne. After deliberation on the evidence, the full Council voted by an 8-5 vote to modify the Recommendation of the Subcommittee and to approve ten (10) duplex buildings rather than the seven (7) recommended by the Subcommittee. The Council issued its decision on July 24, 2001 with forty-five (45) Findings of Fact and three Conclusions of Law. The Wolffs now seek review before this Court.
 STANDARD OF REVIEW
The review of the Council's Decision by this Court is controlled by G.L. § 42-35-15(g) of the Administrative Procedures Act, which provides for review of contested agency decisions:
 "The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on the questions of fact. The court may affirm a decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision, pursuant to § 42-35-15, the Superior Court sits as an appellate court with limited scope of review.Mine Safety Appliances v. Berry, 620 A.2.d. 1255, 1259 (R.I. 1993). The Superior Court is limited to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston Ambulatory Surgical Associates, Ltd. v.Nolan, 755 A.2d 799, 805 (R.I. 2000) (quoting Barrington School Committeev. Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992)). If there is sufficient competent evidence in the record, the court must uphold the agency's decision. Id. at 805 (citing BarringtonSchool, 608 A.2d. at 1138). A judicial officer may reverse the findings of the administrative agency only in instances where the conclusions and the findings of fact are "totally devoid of competent evidentiary support in the record," (Bunch v. Board of Review, 690 A.2d 335, 337 (R.I. 1997); (Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981)), or from the reasonable inference that might be drawn from such evidence. Id. at 337 (quoting Guardino v. Department of SocialWelfare, 122 R.I. 583, 588-89, 410 A.2d 425, 428 (1980)). Additionally, questions of law are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts.Narragansett Wire Co. v. Norberg, 376 A.2d 1, 16 (R.I. 1977); Bunch, 690 A.2d. at 337.
 THE CRMC DECISION
The Wolffs contend that the CRMC violated its statutory authority in modifying the Subcommittee's recommendation from seven (7) buildings with fourteen (14) units to ten (10) buildings with twenty (20) units. The Wolffs base their argument on the following grounds: (1) the full Council improperly overturned the Decision of the Subcommittee in violation of G.L. § 42-35-12 by failing to provide an adequate rationale and sufficient findings of fact in its final Decision; (2) the full Council should provide deference to its duly appointed and authorized subcommittee's findings of fact and conclusions of law unless clearly erroneous; (3) The CRMC exceeded its statutory authority by ruling that Wynne's new proposal would be subject to the rules and regulations of the CRMC that existed at the time of the filing of Wynne's initial proposal in 1998; and (4) the full Council's Decision was erroneous in view of the reliable, probative and substantial evidence in the record that demonstrated Wynne lacked the necessary conservatism to protect environmental degradation.[4]
 SUFFICIENCY OF THE FULL COMMITTEE'S FINDINGS OF FACT
The Wolffs first argue that the full Council improperly overturned the Decision of the Subcommittee in violation of G.L. § 42-35-12 by failing to provide an adequate rationale and sufficient findings of fact in its final Decision. The CRMC responds that the full Council has met its duty by stating in writing why it rejected the recommendation of its staff. See Appellee's Memorandum of Law at 25.
 The statute at issue, G.L. § 42-35-12, states in pertinent part:
 "Any final order adverse to a party in a contested case shall be in writing or stated in the record. Any final order shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings . . . ."
The Decision issued by the CRMC adopted all of the Findings of Fact from the Subcommittee with one additional statement tacked on to the end of Fact #42 (#42).[5] Fact #42 states:
 "In response to testimony presented by the applicants, the CRMC staff responded that the water quality certificate issued by DEM was based in part on an assumption and analogy that the developer could construct five (5) four bedroom dwellings on the site without triggering the requirement for a water quality certification and applying credit for fifty percent nitrogen reduction from the proposed system. The staff disagreed that the site could support five (5) four bedroom dwellings outside the CRMC 200 foot jurisdictional area (i.e. below the CRMC subdivision threshold). Therefore, regarding CRMC regulations, the CRMC staff felt the "equivalent" number of bedrooms excessive. However during the course of the full council hearings, the applicant presented evidence that refuted the CRMC staff position, which is adopted by the full Council." See Decision at 5. (Emphasis added.)
The Wolffs contend that the last sentence of #42 does not provide an adequate rationale for the full Council to modify the Subcommittee's findings. The Wolffs argue that § 42-35-12 requires specific findings of fact, and the term, "evidence," as provided in #42 is inadequate. Relying on G.H. Waterman v Norberg, the Wolffs contend that, even though the Rhode Island Supreme Court has held that § 42-35-12 does not require a separate, express ruling on each proposed finding of a party, the CRMC must do so if the agency's decision on such proposed findings is not clear from the record. See also G.H. Waterman Co. v. Norberg,122 R.I. 825, 412 A.2d 1132 (1980). CRMC responds that there is evidence on the record to support its Findings of Fact.
The CRMC contends that it had new information not available to the Subcommittee, which it considered when deciding to modify its recommendations. The record reflects that the only new evidence which was presented before the Council was the testimony of the Director of the Department of Environmental Management (DEM). The testimony of the DEM Director states:
 "Mr. Chairman I believe that the equivalency issue is critical in this case, and I only learned about its importance and its meaning this afternoon after I got [DEM] staff to brief me on this . . . . The additional piece that I think is important is that, obviously it's somewhat counter-intuitive to think that 26 condo units are the equivalent of five residences. I think it's the additional factors that are important, in that you are talking about single-family residences without advanced treatment compared to condo units with advanced treatment, just so that we all understand why it is important." See Tr. at 114-115.
The full Council used this statement by the Director of DEM to invalidate the entire record of testimony and evidence compiled by the Subcommittee during its five hearings and workshop. While this Court notes that the Director of DEM is a credible and reliable witness, his statement is not supported by any objective data or information from which this Court can conclude whether there is any legally competent evidence to support the Council's Decision. See Blue Cross and BlueShield v. Caldarone, 520 A.2d 969, 972 (R.I. 1987) (finding that a Superior Court review of an agency decision is limited to determining whether the agency's findings are supported by legally competent evidence).
Furthermore, the CRMC's contention that there is sufficient evidence in the record to support its findings is unsupported by the reliable, probative and substantial evidence of the record. A reading of the first forty-one (41) Findings of Fact, issued by the full Council, support the findings of the Subcommittee and are inconsistent with the Decision of the full Council. It is only #42 of the Decision, which references the new "evidence," discussed supra, which refutes the Subcommittee's findings. The Decision further states at Finding of Fact #44, without citing specific evidence or rationale, that:
 "Based upon the evidence before it, assessing the credibility of witnesses and review of the record as a whole, not withstanding the recommendation made by the Subcommittee to reduce the number of units, a majority of the full council finds the calculations performed by the applicants are more credible than those presented by the CRMC staff." See Decision at 5.
Our Supreme Court has held that, "the absence of required findings makes judicial review impossible, clearly frustrating § 42-35-15, the statute for review under which plaintiffs filed their complaints, and fails to satisfy the statutory requirements of § 42-35-12." EastGreenwich Yacht Club v. Coastal Resources Management Council, 118 R.I. 559, 569, 376 A.2d 682, 687 (1977) (holding that absence of required findings by Council make judicial review impossible. Accordingly, this Court finds that the CRMC's Decision is not supported by the reliable, probative and substantial evidence in the record.
 DEFERENCE TO THE SUBCOMMITTEE
The Wolffs next argue that the full Council of a state agency should provide deference to its duly appointed and authorized subcommittee's findings of fact and conclusions of law unless clearly erroneous. The CRMC responds that the full Council need not accept the recommendation of its staff if there is other competent, credible evidence in the record to support its conclusions. See Appellee's Memorandum of Law at 25.
It is the role of this Court to review the record and determine if there is competent evidence in the record to support the Council's Decision. See § 42-25-15(g)(5). Legally competent evidence is indicated by the presence of "some" or "any" evidence supporting the full committee's findings. See Environmental Scientific Corporation v. LouiseDurfee, 621 A.2d 205 (R.I. 1993) (this case concerned an appeal from the Department of Environmental Management which has a similar two-tiered review process). Here, the full Council possesses the statutory authority to overrule the decision of the Subcommittee. In addition, the full committee need not accept the Subcommittee's findings if there is other, legally competent evidence in the record to support the agency's conclusions. Id. An understanding of the administrative procedures of the CRMC will help clarify this issue before this Court. Contested cases before the CRMC are heard in a two-tiered agency review system for evaluating environmental impacts to coastal regions. The Subcommittee sits as a trial court and hears testimony and reviews evidence. The full Council acts as an appellate court and reviews recommendations of the Subcommittee.
The two-tiered system has been likened to a funnel. See Durfee,
621 A.2d 207. The Subcommittee sits at the mouth of the funnel receiving information and conducting public hearings in accordance with appropriate rules of law and the CRMC rules and regulations. At the conclusion of the hearings, the Subcommittee issues a written recommendation to the full Council within thirty (30) days of the final hearing. Coastal Resources Management Program Section 5.2(2). The further away from the mouth of the funnel that an administrative official is when they evaluate the adjudicative process, the greater the deference should be owed the factfinder. See Durfee, 621 A.2d 205. Our Supreme Court has held that in a two-tiered system, such as in the instant case, an agency cannot use its "unquestionable power to assess the credibility of witnesses to posit factual findings unsupported by any evidence other than its disbelief of one or more witnesses." State of Rhode Island, Office of the Secretary ofState v. Rhode Island State Labor Relations Board et al, 694 A.2d 24, 28 (R.I. 1997). In addition, our Supreme Court has held that in a two-tiered system, the second tier is required to give great deference to the first tier's findings of fact and conclusions of law unless they are clearly wrong. Id.
In the instant case, the CRMC argues that the testimony of the applicant's expert(s) was more credible than that of its own Subcommittee. However, in its Decision, the CRMC fails to give any explanation as to why its own Subcommittee lacks credibility other than that of its own disbelief in the Subcommittee staff's calculations. In addition, the Decision does not reference any evidence which would discount the findings of the Subcommittee. Actually, the full Council's Decision supports the recommendations of the Subcommittee in its first forty-one (41) Findings of Facts.
The CRMC's blanket statement that it finds its Subcommittee staff less credible than the applicant's experts, without referring to any legally competent evidence, does not overcome the deference which a full Council must afford to its Subcommittee. Accordingly, this Court finds that the Decision of the CRMC is arbitrary and capricious and clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.
 CRMC's ALLOWANCE OF THE 1998 RULES
At threshold, the issue is the Wolffs' argument that the CRMC exceeded its statutory authority by ruling that Wynne's new proposal would be subject to the rules and regulations of the CRMC that existed at the filing of Wynne's initial proposal in 1998. By its terms, the Wolffs contend that the Subcommittee and full Council are allowing the 1998 zoning regulations to be "grandfathered" into the instant proposal. The CRMC responds that this issue has already been adjudicated in Wynne's original application and the principles of res judicata and collateral estoppel prevent the Wolffs from relitigating the issue during this appeal.[6]
It is well settled in Rhode Island that collateral estoppel applies to decisions that are rendered in quasi-judicial proceedings such as administrative hearings. See Department of Corrections v. Tucker,657 A.2d 546, 549 (R.I. 1995). In order for collateral estoppel to apply in a subsequent proceeding, three conditions must be satisfied: (1) there must be an identity of issues; (2) the prior proceeding must have resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is sought must be the same as or in privity with the party in the prior proceeding. See Richard C. Wilkinson v. StateCrime Laboratory Commission et al., 788 A.2d 1129 (R.I. 2002); see alsoCasco Indemnity Company v. Kevin O'Connor, 755 A.2d 779 (R.I. 2000).
The record reflects that the three elements for collateral estoppel are met in the instant case. The issue that the new proposal is subject to the rules and regulations that existed in 1998 is the identical issue in the instant appeal. The 1998 hearing resulted in a final decision and judgment on the merits. Lastly, parties from the first hearing are the same parties in the instant action. In addition, the Wolffs participated in the hearings and had a chance to be heard. This Court finds that if the Wolffs disagreed with the CRMC's Decision of 1998, they had an opportunity to appeal the decision to the Superior Court for relief in 1998. Since the Wolffs failed to timely appeal the Decision which was rendered them in 1998, they are precluded from appealing the issue in the instant case. Accordingly, this Court finds that the CRMC Decision was not affected by error of law or in excessive of its statutory authority when it applied the 1998 zoning regulations.
 CONCLUSION
After a review of the entire record, this Court finds that the Decision of the CRMC was arbitrary and capricious. Accordingly, this Court remands the CRMC's July 24, 2001 Decision to the agency for specific findings with respect to the evidence, specifically, the evidence presented at the hearing of July 24, 2001 concerning Finding of Fact #42. See CranstonPrintworks Co. v. City of Cranston, 684 A.2d 689, 692 (R.I. 1996) (remanding a case to a municipal body for specific findings of fact and conclusions of law where that body "failed to produce a record that would allow a determination [by the reviewing court] concerning whether its action was arbitrary and capricious"); Sciacca v. Caruso, 769 A.2d 568 (R.I. 2001); von Bernuth v. Zoning Bd. of Review, 770 A.2d 396 (R.I. 2001). This Court will retain jurisdiction.
[1] The planned development would also consist of two communal septic systems, 1200 linear feet of asphalt, associated drainage structures, earth work landscaping, infrastructure and services.
[2] A Preliminary Determination serves as a guideline for the CRMC application process. A PD alerts the applicant to buffer zone and setback requirements, possible problems with the application, and the applicable provisions that must be addressed when a formal application is filed. See
Defendant's Memorandum at 5.
[3] The Wolffs failed to appeal the July 26, 2000 Decision of the CRMC with the Superior Court even though they objected throughout the hearings.
[4] This Court finds that this argument regarding the reliability of the full committee's findings is basically the same as the first argument regarding the sufficiency of the full committee's findings. (Emphasis added.) Accordingly, this Court will address both arguments together.
[5] It should be noted that the Findings of Fact made by the Subcommittee were copied verbatim in the Decision issued by the full Council.
[6] This Court finds that res judicata is not applicable in this case as the Wolffs are appealing only Finding of Fact #4 from the 1998 Decision and not the entire Decision.