[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court for decision is an administrative appeal from a final Decision and Order entered by the Director of the Rhode Island Department of Environmental Management ("DEM") on March 4, 2002, following a hearing by DEM's Administrative Adjudication Division ("AAD"). Appellant Sanford Neuschatz ("Neuschatz") seeks reversal of a DEM decision that found him in violation of certain DEM regulations and assessed an administrative penalty against him in the amount of $15,000. Neuschatz also seeks partial relief from the provision of DEM's order that requires him to bear the sole cost of removing hazardous materials from his land For the reasons set forth in this decision, this Court affirms the decision below.
 FACTS AND TRAVEL I. Contamination and Notices of Violation
The woes of this case stem from the environmental contamination of property located at 2528 Kingstown Road in South Kingstown, Rhode Island that is currently owned by appellant Neuschatz ("the Property"). The Property's bygone days of operating as a gasoline station and general store, known as the Kingston Hill Store, continue to haunt the Property and its owner. Many years ago, underground storage tanks ("USTs") that previously supplied gasoline to the Property's gasoline pumps failed, causing gasoline to leak into the ground. The Property has been plagued with gasoline contamination at least since February of 1988 when a DEM expert in leaking USTs oversaw the removal of one 4000 gallon UST and approximately twenty yards of contaminated soil from the Property.
In August of 1994, DEM issued a Notice of Violation ("NOV") to Charles Maki ("Maki") — Neuschatz's predecessor in title — for failing to perform leak detection tests on the three remaining USTs. DEM recorded the NOV in the town's land evidence records.[1] In July of 1995, Maki agreed to remove the remaining USTs. During the removal of the USTs in November of 1995, a DEM expert in leaking USTs observed evidence of gasoline-related contamination in the tank graves. The DEM recommended a further investigation.
Clean Environment, Inc. investigated the site in July and August of 1996. The company submitted a Site Investigation Report ("SIR") to DEM on September 19, 1996. The SIR detailed soil and ground water contamination and recommended that a Corrective Action Plan ("CAP") be developed for the site. The SIR explained that four groundwater monitoring wells had been installed. One well revealed approximately one-quarter of an inch of petroleum product on the surface of the groundwater. The SIR also found petroleum odors in two other wells, but no contamination in the fourth well.
Maki, however, never implemented a CAP to remediate the Property's contamination outlined in the 1996 SIR. Rather, Maki sold the Property and all of its problems to Neuschatz in August of 1997, before DEM had acted on the issue. About two months prior to closing on his purchase of the Property, Neuschatz, through his attorney, issued a check for $1,400 to the Rhode Island General Treasurer for outstanding penalties that Maki owed to DEM. After receiving payment, DEM issued a Release of Violation for the 1994 NOV that it had filed earlier against the Property in the South Kingstown land evidence records.
By letter dated September 24, 1997, DEM required Neuschatz — the Property's new owner — to propose a CAP to remediate the contamination detailed in the 1996 SIR. In a letter dated October 20, 1997, Neuschatz requested a copy of the SIR. Approximately one year later, and having not heard from Neuschatz, DEM issued a Notice of Intent to Enforce ("NIE") for his failure to submit a CAP. The NIE, dated October 28, 1998, directed Neuschatz to retain an environmental consultant to submit a timetable for the submission and completion of the CAP. By a letter dated November 13, 1998, counsel for Neuschatz responded to the NIE, stating that DEM would receive a timetable for the CAP within 30 days. Neuschatz did not submit a proposed timetable.
DEM's Office of Compliance and Inspection ("OCI") then issued a NOV to Neuschatz on April 5, 2000 for his failure to submit a CAP.[2] DEM recorded the NOV in the South Kingstown land evidence records. The April 5, 2000 NOV cited Neuschatz as violating sections 14.11 and 14.12 of the DEM "Regulations for Underground Storage Facilities Used for Petroleum Products and Hazardous Materials" ("UST Regulations") for his failure to submit a CAP to address the petroleum contamination on the Property.[3] In the NOV, DEM ordered Neuschatz to submit written verification that he had retained an environmental consultant to prepare a CAP to remove all petroleum contamination, to submit the CAP to DEM for its approval, and to implement the approved CAP. As part of the NOV, DEM also ordered Neuschatz to pay a $15,000 administrative penalty, pursuant to R.I. Gen. Laws § 42-17.6-2,[4] and to reimburse DEM for the cost of investigating and remedying the contamination.
 II. Adjudicatory Hearing and Appeal
Neuschatz thereafter sought to challenge the NOV in an adjudicatory hearing before a hearing officer of DEM's Administrative Adjudication Division for Environmental Matters ("AAD"), as provided for by statute.[5] Pursuant to the hearing officer's order and R.I. Gen. Laws § 42-17.7-5,[6]
Neuschatz and DEM's Office of Compliance and Inspection ("OCI") filed prehearing memoranda that outlined their issues. DEM asked the hearing officer to determine "[w]hether [Neuschatz] failed to design, submit and implement a CAP to remediate the known subsurface petroleum contamination as required by §§ 14.11 and 14.12 of the UST Regulations." See DEM Prehearing Memo (Sept. 28, 1999). Neuschatz asked the hearing officer to decide "[w]hether Respondent is the responsible party required to design, submit and implement a Corrective Action Plan to remediate sub-surface contamination, or is the State of Rhode Island responsible as the contamination originated from land owned by it." See Neuschatz Prehearing Memo. Addendum (Oct. 20, 2000).
A hearing officer for the AAD heard the matter on February 5 and February 7, 2001, and visited the site on February 9, 2001. At the hearing, both Neuschatz and OCI had counsel. Each party examined witnesses, cross-examined witnesses, and introduced exhibits. Counsel for the parties also filed prehearing motions, other prehearing memoranda, and post-hearing memoranda.
On March 1, 2002, the hearing officer issued a Decision and Order, which the Director of DEM adopted as a Final Agency Order on March 4, 2002. The Decision and Order is wellreasoned and supported by citations to the record. It also contains sections listing specific "Findings of Fact" and "Conclusions of Law." Ruling against Neuschatz on his primary argument, the hearing officer found that the USTs had been located on his property and not on state land The hearing officer also found that the contamination resulted from a leak somewhere in the underground tank system and required a CAP. She further concluded that Neuschatz had violated the UST Regulations. She upheld the $15,000 administrative penalty that DEM had imposed on him for those found violations.
Neuschatz then filed a timely appeal to this Court from the decision of the AAD hearing officer, as adopted by the Director of DEM. Neuschatz appeals, pursuant to R.I. Gen. Laws § 42-35-15
of the Administrative Procedures Act, and urges this Court to reverse the decision of DEM on the following grounds:
 1. DEM had over one year before Neuschatz took title to the Property to compel Maki to clean up the contamination or to impose a penalty against Maki;
 2. DEM issued a release for the Maki NOV, which Neuschatz reasonably and detrimentally relied on to believe DEM was satisfied with the environmental status of the Property;
 3. "Whether [DEM's] failures to compel performance by Maki over the course of nine (9) years and to disclose to [Neuschatz] that the Property had unresolved matters as to Maki were unintentional or intentional is [sic] noteworthy; equally compelling is the fact that these failures caused [Neuschatz] to be placed in exactly the position for which [DEM] subsequently sought to unfairly punish [Neuschatz];"[7]
 4. Neuschatz's willing efforts to clean up the Property at a substantial cost should have been given due consideration.[8]
DEM responds that Neuschatz's brief states no viable ground for appeal such that his appeal must be dismissed as a matter of law. It reasons that Neuschatz failed to raise any of his appellate arguments during the AAD hearing and that, consequently, those arguments are waived. DEM also maintains that Neuschatz has waived on appeal the sole issue he raised below because he has not briefed that argument on appeal. Alternatively, DEM substantively responds to each of Neuschatz's arguments and argues that they should be rejected on their merits.
 STANDARD OF REVIEW
When considering an administrative appeal pursuant to R.I. Gen. Laws § 42-35-15, the Superior Court must apply a limited standard of review. Mine Safety Appliances Co. v. Berry, 620 A.2d 1255, 1259 (R.I. 1993). Such a review is "limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision."Johnston Ambulatory Surgical Associates, Ltd. v. Nolan,755 A.2d 799, 805 (R.I. 2000); Barrington School Committee v. RhodeIsland State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992). This Court "may not, on questions of fact, substitute its judgment for that of the agency whose action is under review, even in a case in which the court might be inclined to view the evidence differently and draw inferences different from those of the agency." Johnston Ambulatory Surgical Associates, Ltd., 755 A.2d at 805 (internal quotes and citations omitted). This Court is required to uphold the agency's decision if there is sufficient competent evidence in the record to support it.Barrington School Committee, 608 A.2d at 1138. "Legally competent evidence is `relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.'"Arnold v. Department of Labor and Training, Board of Review,822 A.2d 164, 167 (R.I. 2003) (quoting Rhode Island Temps, Inc.v. Department of Labor and Training, Board of Review,749 A.2d 1121, 1124 (R.I. 2000)). This Court, however, may:
 reverse, modify, or remand the agency's decision if the decision is violative of constitutional or statutory provisions, is in excess of the statutory authority of the agency, is made upon unlawful procedure, is affected by other errors of law, is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or is arbitrary or capricious and is therefore characterized by an abuse of discretion.
Johnston Ambulatory Surgical Associates, Ltd., 755 A.2d at 805 (quoting Barrington School Committee, 608 A.2d at 1138 and R.I. Gen. Laws § 42-35-15(g)).
 THE EXISTENCE OF COGNIZABLE ISSUES ON APPEAL
Before considering the merits of Neuschatz's appeal, it is first necessary to determine if any of his arguments are properly before this Court, as he has apparently postured himself into a procedural quagmire. As stated above, the issue Neuschatz argued before the AAD hearing officer pertained solely to his ownership of the property from which the contamination emanated. On this issue, Neuschatz does not claim that the hearing officer erred in her findings of fact or conclusions of law. Rather, Neuschatz now presents this Court with entirely new arguments that he failed to present at the administrative level, that the hearing officer had no opportunity to consider and about which DEM had no opportunity to offer evidence in rebuttal. This Court, therefore, must make a threshold determination as to whether it may consider the arguments of this appellant that were not raised before the administrative agency.
 I. The Raise-or-Waive Rule
It is a well-settled precept in this state that the Rhode Island Supreme Court generally "will not consider on appeal an issue that was not raised before the trial court." Harvey Realtyv. Killingly Manor Condo. Ass'n, 787 A.2d 465, 466-67 (R.I. 2001) (citing Rhode Island Depositors Economic Protection Corp.v. Rignanese, 714 A.2d 1190, 1196-97 (R.I. 1998); Casey v.San-Lee Realty, Inc., 623 A.2d 16, 18 (R.I. 1993); and Bouchardv. Clark, 581 A.2d 715, 716-17 (R.I. 1990)). A party who fails to assert an argument at the trial level is deemed to have waived his or her rights on appeal. Fisk v. MacGregor, 464 A.2d 719, 726 (R.I. 1983). This rule is likewise well established in federal courts and other states. See, e.g., United States v.Nee, 261 F.3d 79, 86 (1st Cir. 2001) ("[i]t is a cardinal principle that issues not squarely raised in the district court will not be entertained on appeal") (internal quotes and citation omitted); Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002) ("[i]t is well-established that a party waives the right to argue an issue on appeal if he fails to raise that issue before the trial court"); Reddick v. Callahan, 587 F. Supp. 880, 882 (D. Mass. 1984); Hoffman v. Houghton Chem. Corp., 751 N.E.2d 848, 861 (Mass. 2001); Iliff v. Dustrud, 107 Cal.App.4th 1201, 1206 (2003).
Our Supreme Court also has articulated the rationale behind the "`raise-or-waive' rule." See State v. Burke, 522 A.2d 725, 731 (R.I. 1987). "Not only does the rule serve judicial economy by encouraging resolution of issues at the trial level, it also promotes fairer and more efficient trial proceedings by providing opposing counsel with an opportunity to respond appropriately to claims raised." Id. (citing 3 LaFave Israel, CriminalProcedure § 26.5(c) at 251 (1984)). The Court has carved only one narrow exception into this rule: the Court will review alleged violations of basic constitutional rights not raised in the Superior Court but only then in limited circumstances.[9] Rhode Island Depositors EconomicProtection Corp., 714 A.2d at 1197 (citing Burke, 522 A.2d at 731); Harvey Realty, 787 A.2d at 467.
 II. Application of Rule at Administrative Level
Although the Rhode Island Supreme Court has not explicitly found the raise-or-waive rule applicable to administrative proceedings, it has found the judicial doctrine of res judicata applicable to administrative agencies.[10] SeeDepartment of Corrections of State of Rhode Island v. Tucker,657 A.2d 546, 549 (R.I. 1995). The Court has observed that "[b]ecause the actions of administrative agencies are frequently quasi-judicial in nature, courts have found it useful to apply [the] judicial doctrines [of res judicata, collateral estoppel and stare decisis] to administrative agencies." JohnstonAmbulatory Surgical Associates, Ltd. v. Nolan, 755 A.2d 799, 808 (R.I. 2000) (citing cases). Moreover, a host of other jurisdictions have applied the rule to administrative tribunals.See, e.g., Cellnet Communications, Inc., v. FCC,149 F.3d 429, 442 (6th Cir. 1998) ("[i]t is well-established that issues not presented to an agency may be deemed waived on subsequent judicial review"); Texaco-Cities Service Pipeline Co. v. McGaw,695 N.E.2d 481, 489 (Ill. 1998) ("[i]ssues or defense not placed before the administrative agency will not be considered for the first time on administrative review"); 5 Stein, Mitchell, Mezines, Administrative Law § 43.02[7] (2003) (collecting cases and stating courts generally will not consider issues not raised at agency proceedings); 3 Charles H. Koch, Jr., AdministrativeLaw and Practice § 13.21[4] (2d ed. 1997) (same). Applying the raise-or-waive rule to this case is consistent with this practice.[11]
Additionally, the Rhode Island Supreme Court's rationale for applying the raise-or-waive rule to traditional appeals to it from the trial court falls squarely within other jurisdictions' reasoning in applying the rule to administrative appeals.Compare Massachusetts Dept. of Public Welfare v. Secretary ofAgriculture, 984 F.2d 514, 523 (1st Cir. 1993) (detailing reasons for applying issue exhaustion in administrative context)with Burke, 522 A.2d at 731 (stating rationale for encouraging issue exhaustion at trial level). The United States Supreme Court has stated that "the basic reasons which support this general principle applicable to trial courts make it equally desirable . . . [to apply it with respect to] administrative agencies entrusted with the responsibility of fact finding."Sims v. Apfel, 530 U.S. 103, 109-10, 120 S.Ct. 2080, 2084,147 L.Ed.2d 80, 86 (2000).[12] Parties, for example, should have an opportunity to offer evidence on issues presented to an administrative tribunal while not being surprised on appeal with issues on which they had no opportunity to present evidence.See id. The raise-or-waive rule also would give the agency an opportunity to "apply its expertise, exercise its informed discretion, and create a more finely tuned record for judicial review." Massachusetts Dept. of Public Welfare, 984 F.2d at 523. Furthermore, applying the rule in the administrative context would serve to promote judicial economy. Id. The administrative agency either could decide the issue outright or at least narrow the issue. Maine v. Shalala, 81 F. Supp.2d 91, 99 (D. Me. 1999). Lastly, enforcing this rule at the agency level would "solidif[y] the agency's autonomy by allowing it the opportunity to monitor its own mistakes and by ensuring that regulated parties do not simply turn to the courts as a tribunal of first resort." Massachusetts Dept. of Public Welfare, 984 F.2d at 523. Otherwise, such a circumventing of administrative authority would drain it of statutory power. Id.
This rationale for imposing the raise-or-waive rule is applicable here. See Burke, 522 A.2d at 731 (rule serves judicial economy and promotes fairer and more efficient trials). Failing to apply the rule in the instant case would be unfair to DEM, which has alleged prejudice by not having had an opportunity to present evidence before the AAD hearing officer to rebut appellant Neuschatz's newly-raised assertions. See id.;Sims, 530 U.S. at 109-10, 120 S.Ct. at 2084, 147 L. Ed.2d at 86. It also would require this Court to decide issues without the benefit of DEM's expertise and based on a record devoid of relevant evidence. See Massachusetts Dept. of Public Welfare,
984 F.2d at 523. In essence, this Court would be conducting a trial de novo on issues raised for the first time on appeal with only the appellate briefs for guidance.
Additionally, this case presents the precise circumstances for which "the rationale for requiring issue exhaustion is at its greatest." See Sims, 530 U.S. at 109-112, 120 S.Ct. at 2084-86, 147 L. Ed.2d at 87-89 (desirability of imposing issue exhaustion depends on degree of analogy between the administrative proceeding and normal litigation); cf.Department of Corrections of State of Rhode Island v. Tucker,657 A.2d 546, 549 (R.I. 1995) (holding that res judicata "should apply to the decision of a quasi-judicial administrative tribunal" (emphasis added)). Here, the administrative proceeding before the AAD hearing officer was not only quasi-judicial in character but parallel in form and substance to contested cases that are litigated before the Superior Court. The AAD hearing was adversarial and not inquisitorial, as the parties and not the hearing officer had the duty to develop and present the facts and the arguments. The parties were represented by counsel. The applicable statutes and DEM's "Administrative Rules of Practice and Procedure for the Administrative Adjudication Division for Environmental Matters" ("AAD Rules") required the parties to specify the issues, witnesses, and evidence they intended to present at the hearing. See R.I. Gen. Laws § 42-17.7-5(1); AAD Rules § 15.00. The parties also had the right to cross examine witnesses, make objections, and file motions. See AAD Rules § 15.00. The hearing officer acted as a "judge" by presiding over the hearing and making all decisions on procedural matters and on the admission or exclusion of evidence. See id.
In addition, both the AAD hearings and Superior Court proceedings employ Superior Court rules and procedure. Section 8.00(A)(1) of the AAD Rules, for example, allows for motions permissible under the Superior Court Rules of Civil Procedure to be presented in an AAD hearing. Section 12.00(a) of the AAD Rules encourages parties to "engage in voluntary discovery as practiced in the Superior Courts of this State." The administrative proceeding also usually observes the rules of evidence as applied by the Superior Court. See AAD Rules § 15.00; R.I. Gen. Laws §42-35-10. Subpoenas also must be served as they are in Superior Court cases. See AAD Rules § 15.00. Furthermore, witnesses testify under oath, in question and answer format, and the parties must observe traditional courtroom decorum. R.I. Gen. Laws § 42-17.7-5(2); AAD Rules § 15.00.
This Court thus finds that the raise-or-waive rule — as commonly applied by the Rhode Island Supreme Court to consider only matters properly raised in the Superior Court — is applicable to the instant administrative appeal. As such, this Court cannot consider any of the arguments that appellant Neuschatz has raised on appeal, as the record discloses that he failed to raise any of those issues during the administrative proceedings. Appellant Neuschatz waived his right to raise these issues before this Court by failing to present them to the hearing officer for consideration. As Neuschatz likewise failed to renew as issues on appeal any issues that he did raise properly in the administrative tribunal below, there are no cognizable issues before this Court on appeal. Appellant Neuschatz simply has failed to present this Court with any arguments that challenge the Decision and Order as affected by any errors of law, in excess of agency authority, clearly erroneous in view of the record, or arbitrary, capricious or reflective of an abuse of discretion.
It should be noted that even were this Court to view this appeal as raising any appropriate challenge to the decision of the Director of DEM, that decision is amply supported by the record in this case. The Property's chain of title, along with the actions of the Property's succession of owners, support the hearing officer's finding that appellant Neuschatz owned the situs of contamination. The record also shows that appellant Neuschatz violated §§ 14.11 and 14.12 of the UST Regulations by failing to submit a CAP for the Property. Lastly, DEM assessed the administrative penalty in accordance with its regulations. An environmental scientist for DEM testified as to the factors she considered in calculating the penalty, such as appellant Neuschatz's degree of culpability and the affect of the violation on the public health and environment. The hearing officer's decision is well-reasoned and supported by this record. Accordingly, the decision below is affirmed in its entirety.
 CONCLUSION
For the reasons set forth in this decision, this Court affirms the Decision and Order of the AAD hearing officer, as adopted by the Director of DEM as a final Agency Order on March 4, 2002. DEM may take further action consistent with its final Decision and Order.
Counsel shall confer and submit to this Court forthwith for entry an agreed upon form of order and judgment that is consistent with this decision.
[1] See R.I. Gen. Laws § 42-17.1-2(ee). This statutory provision provides that DEM notices of violation are eligible for recordation in land evidence records pursuant to chapter 13 of title 34. Subsequent transferees of the property are responsible for complying with the requirements of the notice. Id. Upon correction of the violation, notice to that effect is eligible for recordation in the land evidence records. Id.
[2] See R.I. Gen. Laws § 42-17.1-2(u) (detailing DEM's authority for issuance of a NOV).
[3] Section 14.11 of the UST Regulations states that DEM may require an owner to develop a CAP. Section 14.12 outlines the requisite contents of a CAP.
[4] R.I. Gen. Laws § 42-17.6-2 provides that
 [DEM] may assess an administrative penalty on a person who fails to comply with any provision of any rule, regulation, order, permit, license, or approval issued or adopted by the director, or of any law which the director has the authority or responsibility to enforce. Any such penalty shall be an alternative to any other civil penalty that may be prescribed by law.
[5] See R.I. Gen. Laws § 42-17.6-4 (providing a right to an adjudicatory hearing pursuant to chapter 35 of title 42 whenever the director of DEM seeks to assess an administrative penalty); R.I. Gen. Laws § 42-17.1-2(u)(3) (requiring DEM to hold a hearing on the NOV if a person aggrieved by it requests a hearing within 10 days of service of the NOV); R.I. Gen. Laws §§ 42-35-1 etseq. (setting forth rights, procedures, and guidelines for administrative proceedings).
[6] R.I. Gen. Laws § 42-17.7-5 permits the hearing officer to order parties to file certain prehearing memoranda.
[7] "Appellant Sanford Neuschatz's Brief of Administrative Appeal" at 8.
[8] Neuschatz fails, in his legal memorandum filed on appeal, to cite any legal authority to support these arguments. This failure is troubling. See Wilkinson v. State Crime LaboratoryCommission, 788 A.2d 1129, 1132 n. 1 (2002) (simply stating issues for appellate review without legal briefing and citation of legal authorities does not assist the Court in focusing on legal questions raised). Neuschatz's brief also fails to contain a single citation to the record. This failure makes it difficult to discern whether he is improperly referring to evidence outside the record, which he often does.
[9] For the Rhode Island Supreme Court to consider questions concerning basic constitutional rights not properly presented to the Superior Court, the appellant must show that:
 [f]irst, the error complained of must consist of more than harmless error. Second, the record must be sufficient to permit a determination of the issue. * * * Third, counsel's failure to raise the issue at trial must be due to the fact that the issue is based upon a novel rule of law which counsel could not reasonably have known at the time of trial.
Harvey Realty v. Killingly Manor Condo. Ass'n, 787 A.2d 465, 467 (R.I. 2001) (quoting State v. Smith, 766 A.2d 913, 919 (R.I. 2001)).
[10] This Court is aware of one Superior Court case that applied the raise-or-waive rule to an administrative appeal; however, the applicable statute provided for such a waiver. SeeDepartment of Corrections of State of Rhode Island v. Tucker,
No. 92-4474, 1993 R.I. Super. LEXIS 18, at *9 (July 21, 1993),overruled on other grounds, 657 A.2d 546 (R.I. 1995). Additionally, DEM does not contend that any applicable statute or regulation invokes the raise-or-waive rule in this case, and this Court is not aware of any such statute or regulation. In addition to being judicially imposed, the raise-or-waive rule is often statutorily imposed. See Sims v. Apfel, 530 U.S. 103, 107-08,120 S.Ct. 2080, 2084, 147 L.Ed.2d 80, 86 (2000) (noting rule may be statutorily imposed); e.g., R.I. Gen. Laws § 28-5-30
(objections not urged before human rights commission shall not be considered by a court, absent extraordinary circumstances); R.I. Gen. Laws § 34-37-6(c) (same); 29 U.S.C. § 160(e) (objections not urged before National Labor Relations Board shall not be considered by a court unless excused by extraordinary circumstances); R.I. Super. Ct. R. Crim. P. 12(b)(2) (certain criminal defenses waived if motion fails to assert such defenses and objections); cf. Donnelly v. Town of Lincoln, 730 A.2d 5, 9 (R.I. 1999) (raise-or-waive rule does not bar issue from being raised because statute automatically provides for that issue). Likewise, agency regulations may require issues to be first raised before the agency itself. Sims, 530 U.S. at 108, 120 So. Ct. at, 2084, 147 L. Ed.2d at 86.
[11] The raise-or-waive rule has many aliases in the context of administrative appeals, but the various terms seem to be used synonymously. Other terms include "administrative issue exhaustion," Sims, 530 U.S. at 109, 120 S.Ct. at, 2084, 147 L. Ed.2d at 87, "procedural default," Massachusetts Dept. ofPublic Welfare v. Secretary of Agriculture, 984 F.2d 514, 523 (1st Cir. 1993), and "administrative waiver," Northern Wind,Inc. v. Daley, 200 F.3d 13, 18 (1999). Additionally, the requirement that parties exhaust issues at agency proceedings, i.e. raise them or waive them, should not be confused with the requirement that parties exhaust administrative remedies before appealing to the Superior Court. See Massachusetts Dept. ofPublic Welfare, 984 F.2d at 523 n. 8 (noting distinction between issue exhaustion and remedy exhaustion); see also R.I. Gen. Laws § 42-35-15(a) (requiring parties to exhaust all administrative remedies within the agency before appealing to the Superior Court).
[12] The Sims Court limited the application of the raise-or-waive rule to quasi-judicial administrative proceedings.See Sims, 530 U.S. at 109-112, 120 S.Ct. at, 2084-86, 147 L. Ed.2d at 87-89 (desirability of imposing issue exhaustion depends on degree of analogy between the administrative proceeding and normal litigation). The Court held that parties need not exhaust issues in administrative proceedings that are inquisitorial rather than adversarial. See Sims, 530 U.S. at 109-112, 120 S.Ct. at, 2084-86, 147 L. Ed.2d at 87-89 (reasoning that the parties in a Social Security proceeding were not expected to fully develop the issues because the administrative law judge "had a duty to investigate the facts and develop the arguments both for and against granting benefits").
The Rhode Island Supreme Court applied similar reasoning in finding that res judicata should apply to decisions ofquasi-judicial administrative tribunals. Department ofCorrections of State of Rhode Island v. Tucker, 657 A.2d 546, 549 (R.I. 1995). Reasoning that the agency allows for the presentation of evidence and legal argument similar to that in a judicial proceeding, our Supreme Court held that res judicata should apply "as long as the administrative tribunal grants to the parties substantially the same rights that they would have if the matter were presented in a court." Id. (citing Restatement (Second) Judgments, ch. 6 § 83 (1982)).